DANIEL J. O'CONNOR ET UX., PLAINTIFFS AND RESPONDENTS
  *v.* STEPHEN D. BRODIE ET UX., AND JAMES L. LEE
ET UX., DEFENDANTS AND APPELLANTS.

No. 11496.
Submitted March 11, 1969.
Decided May 19, 1969.
454 P.2d 920.

130

Tipp, Hoven & Brault, Vernon Hoven (argued), Missoula, for appellants.

Edward T. Dussault (argued), Missoula, for respondents·

THE HONORABLE ARTHUR B. MARTIN, District Judge,

sitting in place of MR. JUSTICE HASWELL, delivered the Opinion of the Court.

This is an appeal from a judgment declaring plaintiffs the owners of a water right and an appurtenant easement for a water line together with provisions for the restoration and protection of the adjudged rights.

Facts giving rise to the litigation are as follows: Plaintiffs are the owners of farm lands siuated on the southern outskirts of the city of Missoula, Montana. Plaintiff Daniel J. O'Connor moved upon this farm with his parents in 1908 and he or his parents have since farmed their land, raising livestock and irrigating between twenty and thirty acres of land. The sole source of water supply for their farm operations came from land bordering on the east, which land is now owned by the defendants.

Running through defendants' lands is a creek known as Fairground Creek. This creek is fed by springs located on defendants' land. At a point where these springs flowed into the creek an embankment diverted the water into a ditch which led to an intake pit. In front of the pit and in the ditch were four screens for the purpose of collecting debris. This intake area was enclosed by a wooden fence about five feet high and twenty-five feet in diameter for the purpose of protecting the water source from destruction and pollution by livestock.

Located in the pit was a headgate nozzle attached to a four-inch underground water pipe. This water line traversed defendants' land for a distance of about 800 feet and eventually emerged on plaintiffs' land· When the plaintiff and his parents moved on their land in 1908, the water was carried in an open ditch known as the Loveland ditch. About 1912 the ditch was replaced with cedar pipe laid under the ditch route. In 1953, the cedar pipe was replaced with galvanized iron pipe. Water flowed through this system throughout the year and to ensure this flow the plaintiffs or their predecessors in interest laid and repaired the water line, made periodic inspections, and as occa-

sion required, removed debris and sediment which accumulated in the intake area.

Defendants are engaged in the business of contracting and real estate development. In 1963, defendants acquired the lands on which plaintiffs' water system was located, their purpose being to plat and develop the lands for residential and commercial use.

In 1965, while excavating for a road to their property, defendants came upon plaintiffs' underground pipe line. Plaintiff, Daniel J. O'Connor, personally informed the defendants of his water right and underground water line, but as defendants declined to acknowledge that plaintiffs had any valid claim, plaintiffs commenced this action to enjoin defendants from disturbing plaintiffs' water system. The trial court granted a temporary restraining order conditioned upon plaintiffs furnishing a bond in the amount of $50,000.00. This the plaintiffs failed to provide so defendants proceeded with the development of their lands, destroying the diversion system in the process and stopping the flow of water through the pipe line.

Defendants seek to justify their conduct on the ground that the abstract of title covering their lands did not show any water right or easement to which plaintiffs could lay claim, and that they had no actual notice of the water line because it was underground where it could not be seen.

Several abstracted instruments taken from an abstract of title covering plaintiffs' land were introduced in evidence. These show various appropriations of water from Fairground Creek as early as 1885, but these documents cannot be correlated with plaintiffs' claim so as to show a chain of title. The points of diversion, the amounts of water appropriated or the lands to be served do not correspond with the plaintiffs' claimed appropriation. However, a water right deed introduced in evidence shows that plaintiffs' use of defendants' lands was under color of title. This deed was to one of plaintiffs' predecessors in interest, was dated 1894, and conveyed "Twenty (20) inches

134

of the Water of Fairground Creek  *  *  *  Together with all dams, ditches, headgates, flumes, rights of way across the lands of Harry Haskins and William A. Simons known as the Loveland ditch, together with all franchises and everything necessary to the full free use and enjoyment of said water.'' Uncontradicted testimony established that William A. Simons was one of the original owners of defendants' land. By cross reference to this testimony the water right deed shows that the Loveland ditch, which was in existence when plaintiffs' parents acquired their land, was on defendants' land as early as 1894.

The evidence summarized above is uncontradicted and from it the court concluded as a matter of law that the plaintiffs and their predecessors in interest had ''acquired by appropriation, valid in all respects for over a period of 75 years, a water right to 20 inches of water from springs and Fairground Creek  *  *  *.''

With reference to the water line the court concluded that the plaintiffs and their predecessors in interest had ''by open, continuous, notorious and unmolested use, acquired an easement by prescription  *  *  *''. To give effect to these adjudications the court then concluded that plaintiffs were entitled to have the intake system and flow of water through the pipeline restored by the defendants; that plaintiffs were entitled to enter upon defendants' lands to maintain and repair the water system, and that they were entitled to an injunction permanently restraining defendants from interfering with plaintiffs' rights.

Counsel for plaintiffs and defendants differ in their concept of the issues on this appeal. To clarify and narrow the issues it is necessary to examine in some detail circumstances arising during course of the appeal. The difference in defining the issues is due in part to confusion over whether the water right is an issue on this appeal. Pleadings were framed and the trial was conducted on the premise it was an issue. The plaintiffs in their brief on appeal state that it is the sole issue. Defendants

limit the issue to an inquiry into whether plaintiffs had acquired by prescription a right to use lands of the defendants for the diversion and conveyance of water.

In a memorandum in support of a motion for new trial, counsel for defendants made this statement to the court.

"One must always distinguish between the prescriptive right here sought to be obtained and the water right. At no time has the defendant claimed any of the water or objected to the [defendant's] plaintiffs' taking the water and diverting it through its open ditch under the original appropriation."

It should be noted that counsel correctly observed that water rights and ditch rights are separate and distinct property rights. Maclay v. Missoula Irr. Dist., 90 Mont. 344, 355, 3 P.2d 286. Defendants' appeal is made with this distinction in mind because no argument is made challenging the court's conclusion that plaintiffs are the owners of a valid water right. In fact defendants frame one of their statements of the issues on the premise that plaintiffs had a valid water right.

The trial court made no conclusion of law that the water right, as distinguished from "ditch rights", had been acquired by prescription. This omission, if any, is remedied or accounted for by the defendants' admission of a valid water right. This opinion will therefore not dwell upon plaintiffs' theory of acquisition of the water right, except to say in passing that the evidence relative to the water line and diversion system would amply support specific conclusion that plaintiffs were owners of the water right by reason of title by prescription.

Turning now to the trial court's conclusion relative to the water line and diversion system, the defendants, as shown by their formulation of the issues, have construed the court's conclusions as creating two separate and distinct titles, one relating to the easement for the water line and the other relating to the land used for the diversion system. Under the first, defendants contend that title by prescription must fail because there was not sufficient adverse occupancy by the plaintiffs or their prede-

cessors in interest. Under the second, defendants contend that by enclosing the intake system with a fence and ousting defendants and their predecessors in interest from use thereof, the plaintiffs were claiming fee title to the enclosed land which title must fail because plaintiffs had not paid the taxes on the enclosed land.

Plaintiffs, however, make no claim of fee title to any portion of defendants' lands. Neither is their any finding or conclusion of the trial court suggesting fee title. The plaintiffs, having elected to rest their claim on the doctrine of "prescriptive easement", must stand or fall on that claim. The fact that plaintiffs could not acquire a different title under another legal doctrine is no answer to plaintiffs' claim. "* * * the foundation of the claim of plaintiff and the character of the land in question determine the degree and character of possession or occupancy necessary to satisfy the statutes." Sullivan v. Neel, 105 Mont. 253, 259, 73 P.2d 206, 209.

The sole issue determinative of this appeal is therefore whether the plaintiffs and their predecessors in interest acquired by prescription an easement for the diversion and conveyance of water validly appropriated from the lands of the defendants.

By reason of section 67-601, R.C.M.1947, the rights here claimed by plaintiffs constitute a servitude upon defendants' lands, which servitude is appurtenant to plaintiffs' lands. Such rights are called easements. "The extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Section 67-606, R.C.M.1947. Occupancy for a period now prescribed as five years, confers a title denominated a title by prescription, section 67-1203, R.C. M.1947. "Within the meaning of this section 'occupancy' is also sufficient to acquire an easement by prescription· Groshean v. Dillmont Realty Co., 92 Mont. 227, 12 P.2d 273." State v. Portmann, 149 Mont. 91, 95, 423 P.2d 56, 58.

"To establish the existence of an easement by prescription, the party so claiming must show open, notorious, ex-

clusive, adverse, continuous and uninterrupted use of the easement claimed for the full, statutory period." Scott v. Weinheimer, 140 Mont. 554, 560, 374 P.2d 91, 95. "While in each instance the right is established by proof of hostile possession of another's property, with proof of other attendant circumstances, the hostile possession of lands may be shown by proof of "such acts of ownership and occupancy as are sufficient to 'hoist his flag' over the lands, so that all may observe it." (Collins v. Thode, 54 Mont. 405, 170 P. 940)' " Osness Livestock Co. v. Warren, 103 Mont. 284, 298, 62 P.2d 206, 212.

When the facts of this case are tested by the foregoing principles of law the conclusion that the plaintiffs are owners of a prescriptive easement on land of defendants is inescapable.

Testimony of "old timers" established that except for the change from a ditch to an underground water line, plaintiffs' water system was in existence and continuous use since 1908. Testimony that it was in existence prior to that time is corroborated by the water right deed admitted in evidence. Plaintiffs or their predecessors in interest installed and regularly repaired and main tained the water line; they entered upon defendants' lands to make periodic inspections and to remove debris from intake system. All of this was done with knowledge of and without complaint by any of defendants' predecessors in interest. These circumstances create a presumption of adverse use. "Where the claimant has shown an open, visible, continuous, and unmolested use of the land of another for the period of time sufficient to acquire title by adverse possession, the use will be presumed to be under a claim of right, and not by license of the owner. In order to overcome this presumption, thereby saving his title from the incumbrance of an easement, the burden is upon the owner to show that the use was permissive." Glantz v. Gabel, 66 Mont. 134, 141, 212 P. 858, 860. See also T E Selle v. Storey, 133 Mont· 1, 319 P.2d 218.

Defendants, while recognizing that the foregoing rule is sus-

tained by the great weight of authority contend, first, that this presumption should not be applied to an easement for an underground water line, and second, if applied, contend that the presumption has been overcome by evidence of permissive use or license.

With reference to the first contention, defendants argue an underground water line does not have the element of open and visible use; that being underground, there is no interference or conflict in use of the surface land. In brief, defendants contend there is no adverse occupancy such as exists where an easement is claimed for a roadway.

In answer to this contention we might ask in what further adverse manner could plaintiffs occupy defendants' land with an underground water line? As this Court said in State v. Portmann, supra, 149 Mont., at p. 95, 423 P.2d, at p. 58: "It is difficult to imagine in what manner land might be 'occupied' with respect to a neasement unless it be by actual use." Also, "The right of the owner of the dominant estate is governed by the character and extent of the use during the period requisite to acquire it. (Chessman v. Hale, 31 Mont. 577, 79 P. 254, 68 L.R.A. 410, 3 Ann.Cas. 1038.)" Ferguson v. Standley, 89 Mont. 489, 502, 300 P. 245. Further, as previously noted, the extent of a servitude is determined by the nature of the enjoyment under which it was acquired. Section 67-606, R.C.M.1947.

With reference to the enclosed diversion system, defendants by their contentions have acknowledged adverse occupancy. The trial court made no separate finding that plaintiffs were owners by prescription of the diversion system, but by its conclusion requiring restoration of the flow of water through the pipe line, the trial court treated the diversion system as an integral part of the water right and easement for the water line. Under these circumstances, the prescriptive easement found to exist embraces the complete water system.

Defendants further contend that adverse occupancy did

not exist because the facts of this case do not meet the prudent man test. This test is stated in Brannon v. Lewis and Clark Cty., 143 Mont. 200, 205, 387 P·2d 706, 709, as, "Were the circumstances of the adverse possession sufficient to put a prudent man upon inquiry?" Defendants argue that they had neither actual nor constructive notice of the water line at the time they acquired the property. It is difficult to believe that the defendants, engaged in the business of housing development, would not have inspected the property they were acquiring. A casual inspection would have disclosed the fenced enclosure with its intake system and attached underground water line. A prudent man would have inquired.

But whether the defendants had actual knowledge of the underground water line is immaterial for the reason that plaintiffs had acquired prescriptive title prior to the time defendants acquired their property. Prescriptive title once established is not divested by the subsequent transfer of the servient estate. The defendants' lack of knowledge, if any, of the underground water line is a matter which must be settled between the defendants and their grantor. Ferguson v. Standley, 89 Mont. 489, 498, 300 P. 245.

Taking up now defendants' contention that the presumption of adverse occupancy was overcome by evidence of permissive use or license, the main thrust of defendants' argument is that because the owners of the servient estate did not object to plaintiffs' use—permitted plaintiffs or their predecessors to enter upon their land—and because defendants' predecessors interest were not deprived of water by plaintiffs, a license by defendants' predecessors is to be inferred.

Presumptions are overcome by other evidence, direct or indirect. Section 93-1301-5, R.C.M. 1947· The evidence to which defendants refer amounts to inferences of acquiescence. When the owners of a servient tenement have knowledge of user by the owner of the dominant tenement, failure by the

owner of the servient tenement to object implies acquiescence and not a grant of license. White v. Kamps, 119 Mont. 102, 114, 171 P. 343.

Defendants' arguments of "license" are further rebutted by testimony of witnesses who were former owners or occupiers of defendants' lands. Ellen Shields testified that when she and her husband occupied defendants' land, they sought and were granted permission to tap plaintiffs' water supply for their dairy farm. Witness Fred Prochnow testified that when he acquired defendants' land he knew that O'Connor had water "piped over to his place * * * and it had been in use for many years before that." These former owners recognized that plaintiffs' parents had a superior right and for that reason permitted the plaintiffs' parents to use defendants' lands for diversion and conveyance of the water.

Defendants next contend that plaintiffs have no right to enclose the diversion works with a fence, arguing that there is no such thing as an easement to build a fence. The fence was constructed to protect the diversion works from livestock and pollution. The right to fence for such purposes is granted by the doctrine of secondary easement· This doctrine is correctly quoted in defendants' brief as follows:

Under this doctrine it is said that "one with a ditch easement also has a secondary easement to enter and inspect, repair, maintain or otherwise use the easement." Shammel v. Vogl, 144 Mont. 354, 396 P.2d 103; Laden v. Atkeson, 112 Mont. 302, 116 P2d 881.

Defendants further contend that the right to build a fence around a water source and maintain a diversion works is included within the meaning of section 89-820, R.C.M.1947. This section provides "the right to conduct water from or over the land of another for any beneficial use includes the right to raise any water by means of dams, reservoirs, or embankments to a sufficent height to make the same available for the use intended, and the right to any and all land necessary therefor

may be acquired upon payment of just compensation in the manner provided by law for the taking of private property for public use  *  *  *''. Defendants argue that since plaintiffs have not paid for the land used for the diversion system, there has been no compliance with the statute. This statute has no application to this case. Suffice it to say that the owners of a dominant tenement will not be required to pay for an easement acquired by prescription.

▪ Finally the defendants complain that the trial court's order requiring restoration of the fence will impose no unnecessary use of defendants' lands, now that the land will no longer be used for pasturage of livestock. The court's order goes no further than to require defendants to return to the plaintiffs property wrongfully taken by the defendants. We cannot say from the evidence that a fence is no longer needed. The trial court has had the advantage of viewing the premises and noting surrounding conditions. We will not disturb its judgment. Judgment affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, CASTLES and BONNER, concur.