No. 13691

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

MOUNTAIN VIEW CEMETERY,
A Corporation,

Plaintiff and Appellant,

-vs-

DAVID GRANGER and MRS. DAVID
GRANGER et al.,

Defendants and Respondents and
Cross Appellants.

Appeal from:  District court of the Second Judicial District,
Honorable Arnold Olsen, Judge presiding.

Counsel of Record:

For Appellant:

Corette, Smith and Dean, Butte, Montana
Kendrick Smith argued, Butte, Montana

For Respondents:

Henningsen, Purcell & Genzberger, Butte, Montana
Rex F. Henningsen argued, Butte, Montana

Submitted:  October 3, 1977
Decided:  JAN 18 1978

Filed: JAN 18 1978

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Mountain View Cemetery appeals from a judgment entered in the District Court, Silver Bow County, denying the Cemetery a roadway easement over the adjacent property of defendants Granger and denying an award of treble damages for the Grangers' cutting of two 60 foot blue spruce trees on the Cemetery's property. The Grangers crossappeal from the District Court's findings that the cemetery fence line was the true boundary line between the properties and from the award of $4,000 damages for the wrongful cutting of the Cemetery's trees.

The Cemetery, a corporation, brought action March 21, 1975, against the Grangers to establish the Cemetery's right to an easement by prescription across the southwest edge of Grangers' property near the city of Butte. The Cemetery also alleged damages of $12,000 for the cutting of the two trees just inside the Cemetery's fence line.

The Grangers answered and filed a counterclaim against the Cemetery for encroachments upon Grangers' property. Grangers also filed a third party complaint against F.& S. Contracting Company and Title Insurance Company of Minnesota for insuring title free of the encumbrance of the easement alleged by the Cemetery. The District Court ordered a separate trial on the third party complaint pending outcome of the Cemetery-Granger dispute.

The Cemetery property is adjacent to and south of the Granger property. For approximately 45 years cemetery personnel, and visitors to the cemetery regularly used, without interference, a strip of land approximately 25 feet wide by 247 feet long on the south border of the Granger's land as a second roadway into

the cemetery. The road runs from west to east. The fence line involved is just to the south of the roadway. The blue spruce trees were just to the south of the fence, as was a garage and shed owned and used by the Cemetery. Over a period of 30 years the Cemetery corporation president, Carroll Fabian, had built up the roadway 2 to 3 feet, maintained the road at all times, kept it plowed in winter, and erected a "slow" sign near the road to direct traffic coming into the roadway from Harrison Avenue, a major thoroughfare in Butte which leads south out of Butte. Until the time of the controversy here, the Granger land was open, unenclosed, and unimproved, although at one time part of the land was used for a sand pit.

The Grangers purchased the land adjacent to the cemetery in 1968. In 1973 the Grangers notified the Cemetery by mail to quit using the road. The Cemetery did not reply and continued to use the road. Before this letter there had never been contact between Cemetery personnel and the Grangers or their predecessors in interest concerning the use of the road. The Grangers' land remained unfenced and unimproved until 1973, at which time they began construction of a car dealership on that site.

The Cemetery continued to use the roadway until the Grangers blocked the roadway by parking large trucks and automobiles in it. The blockage of the road resulted in this action filed by the Cemetery against the Grangers seeking to establish the roadway as an easement. The Cemetery also alleged damages for wrongful cutting of 2 60-foot blue spruce trees just south of the alleged easement and inside the cemetery's fence line. Pending the outcome of litigation the District Court granted a temporary order allowing the Cemetery to use a strip 15 feet by 130 feet of the area in question, for access pending the outcome of the trial.

The District Court denied the easement, finding that all elements for a prescriptive easement had been established except for adverse or hostile use. The court also fixed the cemetery fence line as the boundary line between the adjoining properties and assessed damages of $2,000 each for the 2 blue spruce trees cut by Grangers' agents. The court did not award treble damages in the amount of $12,000 as requested by the Cemetery for the cutting of the trees.

The Cemetery contends the trial court should have granted the easement and should have awarded $12,000 as treble damages for the cutting of the trees. In their crossappeal the Grangers contend the trial court erred in determining that the cemetery fence line is the actual boundary line between the adjacent properties. They further contend the $4,000 damages for cutting of the trees was improper because two surveys demonstrate the trees were actually on the Grangers' property.

Cemetery witnesses, including undertakers and florists, as well as the Cemetery owners, testified they had regularly used the road without seeking permission and without interference during periods of up to 45 years. The corporation's president testified that on Memorial Day alone, as many as 600 cars used the roadway in the past. Each day at least ten automobiles used the roadway to go to the cemetery. The Cemetery's evidence there was never permissive use was uncontradicted. Grangers contend it is not their duty to prove they or their predecessors in interest gave permission to the Cemetery to use the road.

Over objection, the Cemetery introduced in evidence a 1914 map depicting the boundaries of the cemetery property to be as the court found them. It is not clear whether nor not the map was based on a previous survey. In support of the map's accuracy a former Silver Bow County surveyor testified that during all

the years he was in office, the county surveyor and his crews relied on the map as their "Bible" when they were working in the area of the cemetery. Also, Carroll Fabian, the Cemetery's corporation president, testified that using the map as a guide, he had measured to the fence line and it conformed to the dimensions stated in the map.

The Grangers introduced 2 independent surveys of the land involved, which established the cemetery fence was actually on the Grangers' property and that the trees south of the fence were also on the Grangers' property. There was a slight discrepancy between the 2 surveys. They agreed however, that one of the trees rested midway between the cemetery property and the Grangers' property. One of the surveys was made before the trees were cut, in conjunction with the purchase of the land by the Grangers, and the other was made after the trees were cut and after this controversy started. The Grangers contend the court was bound to accept the evidence and testimony offered by the 2 surveys.

Grangers further contend that even if it is ultimately determined the trees were not on their property, nevertheless, in cutting the trees they relied in good faith upon a survey which showed the trees to be on their property.

Under section 93-2507, R.C.M. 1947, a party claiming the existence of an easement by prescription must show open, notorious, exclusive, adverse continuous and uninterrupted use of the easement claimed for the full 5 years. Taylor v. Petranek, (1977), _____Mont._____, 568 P.2d 120, 34 St.Rep. 905,909; Scott v. Weinheimer,(1962), 140 Mont. 554, 560, 374 P.2d 91; White v. Kamps, (1946), 119 Mont. 102, 114, 171 P.2d 343. The controversy here is whether the use of the roadway was adverse or permissive.

Montana has consistently followed the minority rule with regard to unimproved and unenclosed lands, which holds that open, visible, continous and uninterrupted use of another's land raises a presumption that the use was also adverse. Taylor v. Petranek, supra; Lunceford v. Trenk, (1974), 163 Mont. 504, 508, 518 P.2d 266; O'Connor v. Brodie, (1969), 153 Mont. 129, 139, 454 P.2d 920; Scott v. Weinheimer, supra; TeSelle v. Storey, (1957), 133 Mont. 1, 5, 319 P.2d 218; Glantz v. Gable, (1923), 66 Mont. 134, 141, 212 P. 858. In O'Connor this Court placed the burden upon the owner to show that the use was permissive in order to overcome this presumption.

The District Court found the Cemetery's use was open, visible, continuous and uninterrupted, but was not adverse or hostile. It is plain the court did not apply the presumption that the use is presumed hostile where the other elements are established under section 93-2507. Accordingly, it was incumbent upon the Grangers to establish that the use was initially permissive, and they wholly failed in this burden. They presented no evidence at all on this issue. They rely instead on the general rule that mere use of land for right of way raises a presumption of permissive use, and does not establish the element of adverse or hostile use which ripens into a prescriptive easement. See Anno. 46 ALR2d 1140. Grangers further contend laches bars the Cemetery's right to assert a prescriptive right.

Even where the general rule is followed however, exceptions have been created where the circumstances of the claimant's use indicate something more than "mere use." Among these are circumstances where the owner is aware of and has not objected

- 6 -

to the use and the claimant has never solicited permission, Flener v. Lawrence, (1920), 187 Ky. 384, 220 S.W. 1041; where the claimant has improved the land and the landowner has acquiesced in the improvement, Gaut v. Farmer,(1963), 215 C.A.2d 278, 30 Cal.Rptr. 94,97; Akers v. Moore, (Ky. 1958), 309 S.W.2d 758; or where the vacant land was situated in an urban or well-settled area, or otherwise in such a condition that the owner knew or should have known of the adverse use, Castillo v. Tabet Lumber Company, (1965), 75 N.M. 492, 406 P.2d 361, 363; Carlson v. Craig, (1953), 264 Wis. 632, 60 N.W.2d 395,398.

It cannot be reasonably contended the Grangers and their predecessors in interest did not know of the use. The trial court found this as a fact and the Grangers do not contest that finding. Here, the Cemetery had built up the road to a height of almost 3 feet over a 30 year period and had maintained the road for the traffic of the cemetery. The cemetery fence line was to the south of the road and any owner of the land involved would have been put on notice as to the use made by the cemetery. Traffic on the road varied from as many as 600 on a Memorial Day to a minimum of 10 on all other days. A "slow" sign directed traffic on the road. This certainly was evidence of hostile intent.

In O'Connor v. Brodie, (1969), 153 Mont. 129,140, 454 P.2d 920, the Court stated there was a duty of a landowner to be on inquiry as to the physical evidence of use of his land by another, and that lack of objection by the landowner under certain circumstances "implies acquiescence and not a grant of license." Here, the Grangers and their predecessors in interest failed to object to the use of the road and the activity on the road.

Even the general rule as contended for by the Grangers would not save them under these circumstances. The exceptions carved out of the general rule would also defeat their claim that the use was initially permissive.

Neither do we find any merit in the Grangers' claim that the Cemetery should be barred by laches from enforcing a prescriptive easement. Over the entire 45 year period the Cemetery enjoyed the use of the land with complete acquiescence of the true owners. It was not until large trucks and cars were parked on the roadway that the Cemetery was prevented from enjoying the use of the road. By this time the Cemetery had already acquired its easement although not yet judicially enforced. When Grangers bought the land, they bought it subject to the easement. Section 67-1607, R.C.M. 1947. Accordingly, by operation of law the Grangers were put on notice of the easement when they purchased the land. This Court stated in O'Connor:

> " * * * Prescriptive title once established is not divested by the subsequent transfer of the servient estate. The defendants' lack of knowledge, if any * * * is a matter which must be settled between the defendants and their grantor." 153 Mont. 139.

The only clear threat to the enjoyment of this roadway was when it was blocked by trucks and cars. Laches applies when a party has been negligent in asserting his right, and "* * * where there has been a delay of such duration as to render enforcement of the asserted right inequitable." Davis v. Steingruber, (1957), 131 Mont. 468, 470, 311 P.2d 784. The Grangers argue their property investment is devalued because the Cemetery delayed bringing the action until after a large investment had been made and construction started. However, we see no duty imposed on the Cemetery to take action declaring its easement until such time as the Grangers threatened the

actual enjoyment of the use of the road. The Cemetery had no duty to seek judicial enforcement of an easement until the easement's benefits were in jeopardy.

We note that the only harm which results from upholding the easement arises from the Grangers' precipitous and premature commencement of construction without first settling the question of the road. From physical evidence of the road itself, as well as their own knowledge of the use of the road, they, and their predecessors in interest, were on notice long before construction began that the Cemetery was using the property in dispute as a roadway. Grangers cannot now claim that laches bars the Cemetery's right to enforce an easement upon that land.

The final issue here concerns the failure of the court to award treble damages for cutting the trees. The District Court found that the cemetery fence line was the true boundary line between the adjacent properties and awarded actual damages for the value of the trees, $2,000 each. The Cemetery contends the trial court was bound by section 17-503, R.C.M. 1947, to award treble damages. The Grangers do not question the value of the trees, but contend in their crossappeal that the trial court was in error in fixing the cemetery fence line as the true boundary line between the adjacent properties. They contend the true boundary line is south of the fence line and even a little south of the area where the trees were growing. If correct, then the fence and the trees would be on the Grangers' property and they would not of course be liable for damages in cutting the trees.

We do not agree the trial court was bound to establish the boundaries as shown by the Grangers' evidence. The Grangers relied on two independent surveys, one before this controversy

arose, and the other in preparation for this controversy. Each survey established the true boundary line as south of the fence line and south of the trees. However, the trial court was not bound to accept their testimony.

During its case the Cemetery introduced over objection, a 1914 map which set out the boundaries of the cemetery property. It was not done in conjunction with a survey nor apparently even in reliance on a survey. However, the Grangers do not contend on appeal that it was error to admit this evidence. The former Silver Bow County surveyor testified that while he was in office he and his crews relied on this map extensively as establishing the boundaries of the cemetery. The president of the Cemetery corporation testified to his own measurements which conformed to the measurements depicted by the map. Neither do the Grangers contend it was error to admit this testimony.

The conflict in the testimony and the evidence created a question of fact for the trial court and it was, of course, within the province of the trial court to resolve that issue against the Grangers as long as there was substantial evidence to support it. Taylor v. Petranek, (1977), ____Mont.____, 568 P.2d 120, 34 St.Rep. 905,909. There was substantial evidence and accordingly, the trial court was correct in determining that the cemetery fence line was the true property line between the adjoining properties.

We do not agree with the Cemetery however, that the trial court was bound to award treble damages against the Grangers for cutting the trees. The Cemetery relies on section 17-503, R.C.M. 1947, which provides:

- 10 -

"For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damage is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, or where the wood was taken by the authority of highway officers for the purposes of a highway; in which cases the damages are a sum equal to the actual detriment."

Under section 17-503 treble damages may be allowed except where the trespass was "casual and involuntary, or committed under the belief that the land belonged to the trespasser * * *." At trial it was agreed that this statute controlled as to whether or not the Cemetery was entitled to treble damages. In entering its findings however, the trial court relied on section 93-6103, R.C.M. 1947 (a statute regarding trespass to property and cutting of trees but not applicable to this case). Section 93-6103 has been interpreted by this Court to require that treble damages are only allowed where trees were cut with malice, wantonness, or evil design. The trial court found that there was no malice, wantonness or evil design, and accordingly, denied treble damages. Because the same finding is not required under section 17-503, the Cemetery asserts that it is entitled to treble damages as a matter of law.

On the other hand, Grangers contend the trial court's decision on treble damages should be upheld, even if it was given for the wrong reasons, because there was evidence to support such a finding. They rely on a survey upon which they acted in cutting the trees, feeling the trees were on their property. The rule which the Grangers ask us to invoke is, one, under certain circumstances a salutary/ In re Williams' Estate, (1916), 52 Mont. 192, 156 P. 1087; Estate of Maricich, 145 Mont. 146, 400 P.2d 873 (1965); but we do not agree it should be followed in this case.

The determination of whether treble damages should be awarded under section 17-503, is a factual question. We cannot state as a matter of law that treble damages were required. Neither can we state that under all circumstances one can avoid treble damages by relying on a survey indicating the trees were on one's own property. The trial court made no findings as to whether/the treble damages provision of the statute was excused under the facts of this case.

We reverse the judgment of the District Court and direct that judgment be entered granting an appropriate easement to the Cemetery, together with the appropriate dimensions. We vacate the findings and conclusions of the trial court on the issue of treble damages and direct that findings and conclusions be entered guided by the provisions of section 17-503, R.C.M. 1947.

This cause is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 12 -