No. 83-557

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

JEANETTE ANN PETERSON,

Plaintiff and Appellant,

-vs-

DEANA HOPKINS, et al.,

Defendants and Respondents.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
               In and for the County of Sheridan,
               The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Smith Law Firm, Helena, Montana

    For Respondents:

        Crowley, Haughey, Hanson, Toole & Dietrich,
        Billings, Montana
        Robert P. Ryan, Billings, Montana

Submitted on Briefs:   March 23, 1984

Decided:   June 14, 1984

Filed: JUN 14 1984

_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Jeanette Ann Peterson appeals from the "summary" judgment of the District Court, Fifteenth Judicial District, Sheridan County, granted in favor of the defendants in an action to quiet title to the mineral interest in certain real property. We reverse the judgment in favor of the defendants and direct judgment in favor of the plaintiff, Jeanette Ann Peterson.

In 1949, Peterson acquired title to a certain piece of real property in Sheridan County, Montana. She sold the property to Donald L. and Louella Blair on April 30, 1956, through a contract for deed. Under the terms of the contract and the accompanying warranty deed, Peterson sold all surface rights and one-half of the mineral interest in the property. Peterson specifically reserved to herself the remaining one-half mineral interest.

On October 9, 1958, Peterson assigned the contract for deed with the Blairs to George Hopkins, a/k/a Walter G. Hopkins. As consideration for the assignment of the contract for deed, Hopkins agreed to pay off a $6,000 note owed by Peterson's husband. Hopkins eventually received the $6,720 in payments due on the contract for deed and the deed was duly recorded by the Blairs.

Peterson leased her one-half interest in the minerals to various lessees from 1950 to 1980. In 1980, the Anschutz Corporation checked the chain of title on the property covered by the contract for deed and discovered what they considered to be a defect in Peterson's title to the one-half mineral interest which she had reserved in the contract for deed. The Anschutz Corporation noted that the assignment to

Hopkins of the contract for deed contained a description which purported to be a description of the real property covered in the contract for deed, but which actually described the entire surface and all of Peterson's mineral interest in the property. Because of this description, the Anschutz Corporation asserted that Peterson had conveyed to Hopkins not only the payments due under the contract for deed, but her one-half interest in the mineral estate as well. The Anschutz Corporation then procured an oil and gas lease from Hopkin's heirs of the mineral rights previously leased by Peterson.

Peterson brought an action to quiet title to the one-half mineral interest in the property on April 7, 1982. Trial was held, and at its conclusion the District Court granted the defendants' motion for summary judgment. This appeal followed.

The issues for our review are as follows:

1) Whether the District Court erred in holding that the assignment of the contract for deed unambiguously conveyed all of Peterson's interest in the subject property and that she retains no right, title or interest in the minerals underlying the property.

2) Whether the District Court erred in disregarding the extrinsic evidence offered by Peterson to show that the parties to the assignment did not intend to assign to Hopkins the one-half mineral interest reserved by Peterson in the contract for deed.

3) Whether the District Court erred in holding that Peterson's claim is barred by the statute of limitations and that she is estopped from claiming title to the one-half mineral interest.

4) Whether the District Court erred in holding that Peterson is barred from asserting her claim to the one-half mineral interest by the doctrine of laches.

5) Whether the District Court erred in holding that Hopkins paid Peterson adequate consideration for the one-half mineral interest.

"SUMMARY" JUDGMENT

The judgment in favor of the defendants is referred to by the parties as a summary judgment, though entered after a trial.

The District Court, adopting verbatim the proposed findings of fact, conclusions of law and order, submitted by one of defendants, held that because the assignment of the contract for deed "clearly and unambiguously conveyed all of plaintiff's interest in the property, including the subject mineral interest, plaintiff has no right, title, interest, estate, lien or encumbrance in or upon said property." In reaching this conclusion, the District Court relied upon the following language contained in the assignment: ". . . and said First Party does further convey, remise, release and forever quit claim unto the Party of the Second Part, his heirs and assigns, all her right, title and interest in and to the real property hereinbefore described, together with the contract for deed thereon."

If the assignment is considered only in light of this particular provision, it would appear that the District Court correctly concluded that the one-half mineral interest was conveyed to Hopkins. Examining the assignment in its entirety, however, we find that the District Court erred in granting judgment in favor of the defendants.

Immediately following the provision in the assignment relied upon by the District Court is a provision which reads: "TO HAVE AND TO HOLD unto the Party of the Second Part, his heirs and assigns, together with all rights, privileges and benefits thereunto belonging, but subject, nevertheless, to all terms and conditions of the aforementioned described contract forever." (Emphasis added.) From this, it appears that the assignment was subject to the reservation of the one-half mineral interest by Peterson as one of the terms and conditions of the contract for deed. Under this provision, therefore, the assignment could not convey all of plaintiff's right, title and interest in the one-half mineral interest.

The seeming conflict between the two provisions creates an ambiguity in the assignment. Where the language of a written contract is clear and unambiguous, there is nothing to construe and the duty of the court is to apply the language, as written, to the facts of the case. Martin v. Community Gas and Oil, Inc. (Mont. 1983), 668 P.2d 243, 40 St.Rep. 1385; Kartes v. Kartes (1981), 195 Mont. 383, 636 P.2d 272. However, where an ambiguity exists in the contract and the contract, taken as a whole in its wording and phraseology is reasonably subject to two different interpretations, the court must construe the contract to determine the intent of the parties. Section 28-3-301, MCA; Souders v. Montana Power Co. (Mont. 1983), 662 P.2d 289, 40 St.Rep. 583; Lemley v. Bozeman Community Hotel Co. (Mont. 1982), 651 P.2d 979, 39 St.Rep. 1877. In doing so, the court should look to the whole contract and its purpose and is not bound by any single expression or provision. St. Paul Fire and Marine Ins. Co. v. Cumiskey (Mont. 1983), 665 P.2d 223,

- 5 -

40 St.Rep. 891; Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163.

The first indication of the parties' intent appears in the title of the document--"Assignment of Contract for Deed." Under the terms of the assignment, Peterson covenants that she "does sell, assign, transfer and set over unto the Party of the Second Part, his heirs and assigns, all her right, title and interest in and to a certain contract for deed . . ." (Emphasis added.) The terms of the assignment further provide that the legal description contained in the assignment is to be a description of the real estate covered by "said contract." As assignee under the contract, Hopkins was to receive "all moneys to become due under the terms and provisions of said contract." To secure the receipt of the payments due under the contract for deed, the assignment further provided that all right, title and interest in the real property was quitclaimed to Hopkins.

From the terms of the assignment, therefore, it appears that the document was intended by the parties to be an assignment of a contract for deed, not a deed of the surface and mineral interests in a certain piece of real estate. Thus, although the legal description referred to in the provision relied upon by the District Court may be construed to include the one-half mineral interest reserved by Peterson, the assignment was subject to the terms and conditions of the contract for deed which included the reservation of the one-half mineral interest.

To support our interpretation, we need only to examine the conduct of the parties to the assignment. It is well-settled that where the language of a contract is doubtful and ambiguous, the conduct of the parties under the

contract is one of the best indications of their true intent. Souders v. Montana Power Co. (Mont. 1983), 662 P.2d 289, 40 St.Rep. 583; Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163. Here, Peterson leased her interest in the minerals from 1950 to 1980. At no time from the execution of the assignment to his death in 1975, did Hopkins claim any right to all of the minerals or make any demand upon Peterson for the one-half mineral interest which she had reserved in the contract for deed. Thus, the parties' conduct is consonant with an interpretation of the assignment that Hopkins did not bargain for or receive the one-half mineral interest which Peterson had reserved in the contract for deed.

Rule 56(c), M.R.Civ.P., provides that before summary judgment may be granted it must be shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Based upon our interpretation of the assignment of the contract for deed, we find that the District Court erred in granting the defendant's motion for summary judgment. The language of the assignment does not "clearly and unambiguously" convey all of Peterson's interests in the real property described in the assignment of the contract for deed. On the contrary, the assignment is, by its terms, subject to the terms and conditions of the contract for deed, which clearly includes the reservation of the one-half mineral interest. Here, judgment should properly be granted to Peterson rather than to the defendants, as a matter of law.

USE OF EXTRINSIC EVIDENCE

The District Court disregarded the extrinsic evidence offered by Peterson's counsel at trial to aid the court in

- 7 -

interpreting the assignment, because the court found that the assignment of the contract for deed was not ambiguous. Section 28-2-905, MCA, provides in pertinent part:

> "28-2-905. When extrinsic evidence concerning a written agreement may be considered. (1) Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore, there can be between the parties and their representatives or successors in interest no evidence of the terms of the agreement other than the contents of the writing . . ."

However, subsection (2) provides:

> "(2) This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud."

Therefore, where a written instrument is ambiguous, extrinsic evidence may be utilized to discover the parties' intent. St. Paul Fire and Marine Ins. Co. v. Cumiskey (Mont. 1983), 665 P.2d 223, 40 St.Rep. 891; Adams v. Chilcott (1979), 182 Mont. 511, 597 P.2d 1140. Because we have determined that the assignment was ambiguous, the extrinsic evidence offered by Peterson's counsel was admissible to show the parties' intent.

Part of the excluded evidence was the testimony of Dale Forbes, the attorney who drew up the assignment. When asked if it was his intention to include anything more than what was covered by the contract for deed in the legal description of the real property contained in the assignment, Forbes replied that the purpose of the assignment was primarily to transfer and secure for his client the proceeds of the contract for deed; the legal description was meant to include only the real estate covered by the contract for deed.

STATUTE OF LIMITATIONS

The District Court held that because Peterson waited more than 25 years to bring the quiet title action, her claim is barred by the "applicable statute of limitations" and she is estopped from claiming title to the mineral interest.

Generally, the "applicable statute of limitations" is determined by the nature of the cause of action. Sections 27-2-201 through 27-2-215, MCA. For example, under section 27-2-202, MCA, the period prescribed for the commencement of an action upon any contract, obligation, or liability founded upon an instrument in writing is within 8 years. Some causes of action, however, do not fall clearly within the provisions of the specific statutes of limitation found in the code. Normally in these cases, the residual statute of limitation, section 27-2-215, MCA, would be applicable. This is not the case, however, where, as here, the cause of action concerns real estate. Grogan v. Valley Trading Co. (1904), 30 Mont. 229, 76 P. 211; Burt v. Cook Sheep Co. (1891), 10 Mont. 571, 27 P. 399.

In many jurisdictions, the right of a plaintiff to have his title to land quieted, as against one who is asserting some adverse claim, is not barred while the plaintiff or his grantors remain in actual possession of the land, claiming to be the owners. The reason for this rule is that while the owner in fee remains liable to an action upon the adverse claim, he or she has a continuing right to the aid of a court of equity to determine the nature of such claim and its effect on his or her title, or to assert any superior equity. Persons in possession may wait until their possession is disturbed or until their title is attacked before taking steps to vindicate their right. 65 Am.Jur.2d Quieting Title

- 9 -

§ 55 (1972); Oates v. Nelson (1969), 269 Cal.App.2d 18, 74 Cal.Rptr. 475.

Section 70-19-402, MCA, provides that:

"70-19-402. <u>Action or defense arising out of title to property or profits--possession within 5 years required.</u> No cause of action or defense to an action, arising out of the title to real property or to rents or profits out of the same, can be effectual unless it appears that the person prosecuting the action or making the defense or under whose title the action is prosecuted or the defense is made or the ancestor, predecessor, or grantor of such person was seized or possessed of the premises in question within 5 years before the commencement of the act in respect to which such action is prosecuted or defense made."

From this section, it would appear that in Montana seizure or possession within five years of the cause of action is the only limitation imposed by statute on one who wishes to quiet title to real property.

In an early Montana case involving a dispute as to whether the statutes of limitation in effect at the time barred an action concerning water rights previously fixed by a court decree, we held that, "[s]uits to adjudicate water rights are in the nature of actions to quiet title to realty. [Citations omitted.] The running of time tends to strengthen rather than destroy title determined by decree." Missoula Light & Water Co. v. Hughes (1938), 106 Mont. 355, 363, 77 P.2d 1041, 1046. Although title here was not determined by decree, the principle is the same.

Because Peterson was seized of the mineral interest within the five-year limitation period imposed by section 70-19-402, MCA, she was entitled to wait until her title was questioned before filing an action to quiet title to the one-half mineral interest. Peterson's cause of action was not, therefore, barred by the "applicable statute of

limitation" and she is not estopped from asserting title to the one-half mineral interest.

LACHES

In its findings of fact and conclusions of law, the District Court stated that "because plaintiff has waited over 24 years to commence this lawsuit, she is barred by the doctrine of laches from asserting her claims in this mineral interest." However, the length of time within which rights are not asserted is not the only consideration. King v. Rosebud County (Mont. 1981), 631 P.2d 711, 38 St.Rep. 1145; Matter of Estate of Wallace (1980), 186 Mont. 18, 606 P.2d 136. The doctrine of laches applies when a party has been negligent in asserting a right, and where there has been an unexplained delay of such duration as to render enforcement of the asserted right inequitable. Anderson v. Baker (1981), 196 Mont. 494, 641 P.2d 1035; Mountain View Cemetery v. Granger (1978), 175 Mont. 351, 574 P.2d 254. Thus for the doctrine of laches to apply, two requirements must be met: 1) negligence in asserting a right and, 2) unexplained delay which would render enforcement of the asserted right inequitable.

The Court addressed these dual requirements in Mountain View Cemetery v. Granger (1978), 175 Mont. 351, 574 P.2d 254. In that case, the Cemetery sought to establish its right to an easement by prescription across neighboring property. The Cemetery had used the property in question as a roadway for approximately 45 years before it was prevented from such use by the Grangers. In answering the Grangers' claim that the Cemetery was barred by laches from enforcing a prescriptive easement, this Court held:

". . . However, we see no duty imposed on the Cemetery to take action declaring its easement until such time as the Grangers threatened the actual enjoyment of the use of the road. The Cemetery had no duty to seek judicial enforcement of an easement until the easement's benefits were in jeopardy." 175 Mont. at 358, 574 P.2d at 258.

The Court also noted that the only harm which resulted from upholding the easement arose from the Grangers' own precipitous and premature actions.

Here the case is much the same. Peterson was under no duty to seek a judicial determination of her right to title until that title was challenged. A person cannot anticipate all challenges which may arise in the future. Also lacking in this case is any harm or inequity. Hopkins' heirs were unaware of their possible claim to the one-half mineral interest until the possibility was brought to their attention in 1980 by the Anschutz Corporation. Therefore, the lapse of time between the execution of the assignment and the filing of the quiet title action did not render enforcement of Peterson's claim inequitable.

The doctrine of laches, however, does bar Hopkin's heirs from asserting any rights to the one-half mineral interest. In Lowrance v. Gunderson (1971), 157 Mont. 532, 536, 487 P.2d 511, 514, this Court held:

"That laches was very applicable to the case presented by the plaintiff here is supported by this Court's holding in Kavanaugh v. Flavin, 35 Mont. 133, 138, 88 P. 764, citing Hammond v. Hopkins, 143 U.S. 224, 12 S.Ct. 418, 36 L.Ed. 134, wherein it is stated:

"'No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith, and reasonable diligence, but will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred. The rule is peculiarly applicable where the difficulty of doing entire justice arises through the death of

- 12 -

the principal participants in the transactions complained of, or of the witness or witnesses, or by reason of the original transaction having become so obscured by time as to render the ascertainment of the exact facts impossible.'

"See also Akey v. Great Western Bldg. & Loan Assn., 110 Mont. 528, 104 P.2d 10; Barrett v. Zenisek, 132 Mont. 229, 315 P.2d 1001; O'Hanlon v. Ruby Gulch Min. Co., 64 Mont. 318, 209 P. 1062; Riley v. Blacker, 51 Mont. 364, 152 P. 758."

Peterson exercised complete control over the one-half mineral interest for almost 30 years. During that time, Hopkins, a party to the assignment, never asserted a right to the mineral interest. Only 24 years later, after Hopkin's death, do his heirs claim an interest in the minerals which the parties never intended to exist.

CONSIDERATION

Because we have determined that Peterson did not transfer all of her right, title and interest in the one-half mineral interest to Hopkins under the terms of the assignment of the contract for deed, the issue of adequate consideration need not be considered.

The judgment of the District Court in favor of the defendants is reversed and judgment granted in favor of the plaintiff, Jeanette Ann Peterson and against the defendants claiming a mineral interest under the assignment of October 9, 1958 to George Hopkins a/k/a Walter G. Hopkins, deceased.

_John E. Sheehy_
Justice

We Concur:

_Frank J. Harwell_
Chief Justice

- 13 -

_Justices_