PER CURIAM.
Appellant contends the trial court erred in determining that appellee has a prescriptive easement to continue the use of a well, pump, and pump house located on appellant’s property. We affirm.
In 1954, the Blounts subdivided property known as Blount’s Camp No. 2, and at about the same time, installed a well, pump, and pump house on the southeastern corner of Lot 23 and began providing water service for profit under the name of Blounts’ Water System. Although the Blounts did not retain ownership of any portion of Lot 23, they have operated the water system openly and continuously since 1954. Also, since that time, they have maintained the pump house under lock and key. Farley and his predecessors in title to Lot 23 have paid monthly for water service. After purchasing Lot 23 in 1974, Farley fenced his property, with the exception of the corner on which the pump house is located. The pump house which houses the well and pump is approximately fifteen feet by twenty five feet in size.
*250 In 1993 Farley became dissatisfied with the quality of the water service due, apparently, to problems with chlorination and the lack of fire protection, and he sought to obtain a consumptive use permit from the Northwest Florida Water Management District for a well for his own use. It became apparent that he could not obtain a consumptive use permit due to the presence on Lot 23 of the well used by appellee. Appellee also applied for a consumptive use permit and in addition, sought a declaratory judgment, asserting the existence of a prescriptive easement with regard to the well, pump, and pump house. The trial court found that a prescriptive easement did exist.
To establish entitlement to a prescriptive easement, one must prove (1) that he or she and any predecessors in title have made actual, continuous and uninterrupted use of the lands of another for the prescriptive period (twenty years); (2) that (when the claim is to a right-of-way) the use has entailed a definite route with a reasonably certain line, width and termini; (3) that the use has been either with the actual knowledge of the owner or so open, notorious and visible that knowledge of the use must be imputed to the owner; and (4) that the use has been adverse to the owner — that is, without permission (express or implied) from the owner, under some claim of right, inconsistent with the rights of the owner and such that, for the entire period, the owner could have sued to prevent further use.
Suwannee River Water Management District v. Price, 651 So.2d 749 (Fla. 1st DCA 1995), citing Downing v. Bird, 100 So.2d 57 (Fla.1958). “Because the law does not favor the acquisition of prescriptive rights, use or possession of another’s land is presumed to be subordinate to the owner’s title, and with the owner’s permission; and the burden is on the claimant to prove that such use or possession is adverse to the owner.” Id. On review, the court must view the evidence in favor of sustaining the finding below. Burgess v. Burd, 654 So.2d 1028 (Fla. 1st DCA 1995). Doubts as to the existence of an easement are to be resolved in favor of the landowner, and the proof required to overcome the presumption of permission “cannot be established by loose, uncertain testimony which necessitates resort to mere conjecture.” Spain v. Minder, 346 So.2d 139 (Fla. 1st DCA 1977) (Boyer, J., concurring specialty)-
In the present case, the elements of continuous use and knowledge are not in doubt. At issue are the questions whether the use of the well was adverse rather than permissive; whether the operation of the water service for profit precludes a finding of easement; and whether the exclusiveness of appellee’s use of the fifteen by twenty-five foot corner of Lot 23 precludes a finding of easement.
The record supports the trial court’s finding that the use of the property was adverse. The pump house was maintained continuously under lock and key. In addition, Farley and his predecessors paid the Blounts for water service. These factors support the conclusion that the use was made under claim of right, inconsistent with the rights of the owner, and without permission.
Appellant argues that the interest involved here cannot be an easement because the Blounts derive a profit from the sale of the water. Appellant points out that by definition, an easement is “ ‘a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of another per-son_’” Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926). Appellant contends that rather than an easement, this situation involves a “profit a prendre” which requires an express grant. “A profit a prendre is the right or privilege to acquire, by severance or removal from another’s land, some thing or things previously constituting a part of the land or pertaining to the land.” Merriam v. First National Bank of Akron, 587 So.2d 584 (Fla. 1st DCA 1991). “It is therefore distinguishable from an easement, since one of the features of an easement is the absence of all right to participate in the profits of the soil charged with it.” 25 Am.Jur.2d “Easements and Licenses” § 4 (1966). It appears, however, that water is not considered a product of the soil in this context. See id. We conclude, as did the trial court, that the Blount’s profit from the water service is not *251 determinative of whether a prescriptive easement exists.
Finally, appellant contends no easement exists because appellee claims exclusive possession rather than use of the portion of the lot in question. For support appellant cites Platt v. Pietros, 382 So.2d 414 (Fla. 5th DCA 1980), in which the court stated that “[c]omplete dominion is inconsistent with a claim of easement.”
In Platt, the defendant put up a fence which completely blocked platted roads and streets and impeded access to lots, and proceeded to graze cattle on the lots. The court concluded that the defendant had asserted complete possession of the property in question, which encompassed the entirety of the lots. See also Weis v. Hovnanian Florida, Inc., 436 So.2d 258 (Fla. 4th DCA 1983) (reversing grant of prescriptive easement to fence property for animal husbandry purposes, which would totally exclude any use by true owner).
The present case is distinguishable, because appellee’s use does not completely exclude appellant from any use of his lot; rather, appellee uses only so much of Lot 23 (a corner 15' x 25' in size) as is required to use the well. “[A]n easement carries with it by implication the right to do what is reasonably necessary for the full enjoyment of the easement itself. Generally the rights of an easement owner are measured and defined by the purpose and character of the easement.” 20 Fla.Jur.2d “Easements” § 29 (1980). See also Florida Power Corp. v. McNeely, 125 So.2d 311 (Fla. 2d DCA 1960); 25 Am.Jur.2d “Easements and Licenses” § 72 (1966). According to the Restatement (First) of Property § 480 comment a (1944): “[t]he making of repairs and improvements necessary to the effective enjoyment of the use privileged by an easement created by prescription is incidental to the easement,” so long as they do not “unreasonably increase the burden on the servient tenement.” See generally Crescent Harbor Water Co. v. Lyseng, 51 Wash.App. 337, 753 P.2d 555 (1988) (prescriptive easement for use of well and water system), and O’Connor v. Brodie, 153 Mont. 129, 454 P.2d 920 (1969) (prescriptive easement for water diversion system, including fenced intake system).[1]
AFFIRMED.
JOANOS, MICKLE and VAN NORTWICK, JJ„ concur.

. We recognize the equity of appellant’s position, in that it appears he may be unable to construct a well on his lot, given the outcome here, but we believe there are also equities in appellee’s favor, having operated the well for over forty years, serving 73 customers.