No. 13402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

GARY F. STEPHENS and
NANCY L. STEPHENS, husband
and wife,

        Plaintiffs and Counter-Defendants,

    v.

DR. JOHN T. HURLY, as Trustee,
and ROBERT HURLY,

        Defendants and Counter-Claimants,
        and Appellants

---

Appea; from:  District Court of the Eleventh Judicial
             District,
             Honorable J. M. Salansky, Judge presiding.

Counsel of Record:

    For Appellants:

        Robert Hurly argued, Glasgow, Montana
        Murphy, Robinson, Heckathorn & Phillips,
        Kalispell, Montana

    For Respondents:

        Warden, Walterskirchen & Christiansen,
        Kalispell, Montana
        Gary Christiansen argued, Kalispell, Montana

---

                Submitted:  March 23, 1977

                    Decided: APR 20 1977

Filed: APR 20 1977

_Thomas J. Kearney_
              Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This case concerns a dispute over the location of the boundary separating two parcels of lake front property. Gary F. Stephens and Nancy L. Stephens (his wife) brought the action in the district court, Flathead County, seeking determination that their survey correctly established the boundary line between their property and the adjoining property of appellants Hurly. Stephens also sought a decree quieting title to their property; removal of certain encroachments; reimbursement of the cost of their survey; compensatory and punitive damages; and permanently enjoining the Hurlys or their successors in interest from interfering with their property. Hurlys counterclaimed for quiet title.

The case was tried before Hon. Robert S. Keller, district judge, sitting without a jury. Judgment was entered for the Stephens, quieting title and establishing the boundary as set forth in their survey. In addition, the court permanently enjoined Hurlys or their successors from interfering with the Stephens' property, ordered the encroachments removed, and awarded costs of the survey to the Stephens. From this judgment the Hurlys appeal.

The two parcels of property in question were part of a larger tract originally owned by one George E. Barkley. This tract was located on the shore of Whitefish Lake in Government Lot 4, Section 24, Township 31 North, Range 22 West M.P.M. On August 10, 1934, Barkley conveyed the Stephens property to their predecessors in interest. About a year later, Barkley conveyed the Hurly property to their predecessors in interest. The legal descriptions for each parcel have remained the same from the time of the initial Barkley conveyances to the present time.

In 1959, one John Thumma sold the Hurlys a tract of

land 160 feet wide bounded on the west by Whitefish Lake, on the north by what is now the Viking Motel property, bounded on the east by the Big Mountain highway, and bounded on the south by the Stephens property. The Hurly property was at the time of the sale, and ever since, has been bounded by the waters of Whitefish Lake on one side, and enclosed by fences on the remaining three sides.

In 1973, Stephens purchased the parcel adjoining the Hurly property on the south, with the intent of constructing a residence thereon. Stephens staked out the location of the house on the ground. The house was custom designed by an architect for that particular parcel of land, taking into careful consideration the width of the lot. While staking out the residence, it became apparent that although the deed provided for 80 feet in width, there was not actually 80 feet between the Stephens' south boundary and the Hurly fence on the north.

At that point Stephens contacted Dean Marquardt, a certified civil engineer and land surveyor, and requested a survey to determine the location of the common boundary line between the Stephens and Hurly tracts. Marquardt prepared the survey and staked the dimensions of the Stephens lot using the existing controlling corners and information from previous surveys of the tracts nearby. The original government survey notes which were compiled on the area in question in 1893 were not used by Marquardt.

The Marquardt survey established the Hurly fence was in fact encroaching upon the northern portion of the Stephens' property. The encroachment is a pie-shaped strip running the entire length of the Stephens' lot from the lake shore to the Big Mountain highway. It is approximately 10 feet wide at the lake shore and tapers down to 2 feet at the highway. An 8' x 42' mobile home, water and sewer lines, and various other

improvements are located upon this pie-shaped piece of property.

Stephens notified Hurlys of the encroachment and attempt-
ed to negotiate a resolution of the problem. They were totally
unsuccessful; in fact the Stephens were advised by the Hurlys
that the courts were their only alternative. Thereafter the
complaint was filed on July 18, 1974.

Three issues are presented for review:

I. Is the Stephens' action barred because they were not
in possession of the property within five years of the commence-
ment of their action?

II. Are Hurlys entitled to a decree quieting title to
the disputed tract by adverse possession?

III. Is the Marquardt survey correct?

Issue I. As an affirmative defense, the Hurlys claim
the Stephens are barred from commencing an action for quiet
title by the provisions of sections 93-2504 and 93-2505, R.C.M.
1947, which provide:

> Section 93-2504. " No action for the recovery
> of real property or for the possession thereof,
> can be maintained, unless it appear that the
> plaintiff, his ancestor, predecessor, or
> grantor, was seized or possessed of the property
> in question within five years before the commence-
> ment of the action."

> Section 93-2505. "No cause of action, or defense
> to an action, arising out of the title to real
> property, or to rents or profits out of the same,
> can be effectual, unless it appear that the person
> prosecuting the action, or making the defense, or
> under whose title the action is prosecuted or the
> defense is made, or the ancestor, predecessor, or
> grantor of such person, was seized or possessed
> of the premises in question within five (5) years
> before the commencement of the act in respect to
> which such action is prosecuted or defense made."

The record clearly shows that the Stephens and their
predecessors were not in actual possession of the disputed
property for the five years immediately prior to the commence-
ment of this action. The record reflects this testimony at the

trial:

> "Q. (to Mr. Stephens) Have you and your wife
> ever been on and had possession of the property
> which was enclosed by the fence and includes
> the trailer? A. We sure haven't."

> "Q. (to Mr. Hurly) Since you have been there,
> has anyone ever been in possession of the land
> north of your south fence? A. No one.

> "Q. Other than yourself and your family? A.
> No one else."

The quoted statutes both use the words "seized or possessed of the property in question within five (5) years before the commencement of the action." This language is clearly in the alternative--"seized or possessed." Thus seisin alone by the Stephens meets the statutory requirements.

In Hanley v. Stewart, 155 Pa.Super. 535, 39 A.2d 323, 326, the court said:

> " * * * there is substantial competent authority
> for the position that 'seized', used by itself,
> commonly refers to a possession in fee simple."

The court in Altschul v. O'Neill, 35 Or. 202, 58 P. 95, 96, said:

> "'The law deems every man to be in the legal seisin
> and possession of land to which he has a perfect
> and complete title. This seisin and possession
> is co-extensive with the right, and continues till
> he is ousted thereof by an actual adverse possession.'"

A general discussion of the concept of "seisin" is found in 63 Am Jur 2d, Property §40, p. 324:

> "By the ancient law of England, the title,
> that is, full and complete dominion of land,
> could be conveyed only by the solemn act of livery
> of seisin, and no deed or charter was necessary.
> Deeds and charters came into use at a later
> period. At first they were held not to convey
> the estate itself but only to evidence, the nature
> of the conveyance; gradually, however, the rule
> of actual seisin or seisin in deed came to be
> regarded as the equivalent of livery of seisin,
> and it has long since been the rule that livery
> of seisin is not necessary to perfect a fee simple
> title to land. Seisin in a legal sense means
> possession of land coupled with the right to possess
> it and a freehold estate therein; it is practically
> the same thing as ownership. The law deems every

man to be in the legal seisin and possession of land to which he has a perfect and complete title. This seisin and possession is co-extensive with his right, and continues until he is ousted therefrom by an actual adverse possession. Actual occupancy is not essential to a lawful seisin, although it is to a tortious or unlawful seisin.

" * * * When a man is once seised of land, his seisin is presumed to continue until a disseisin is proved." (Emphasis added.)

This quotation makes it clear the Stephens and their predecessors in interest were seized of the property in question. There is no contention that the Stephens' title is not complete. The property was conveyed to them as defined by the legal description. The Marquardt survey, using this description, established the Hurly fence is in fact encroaching upon the Stephens' property. We hold the Stephens and their predecessors were seized of the property in question and therefore entitled to bring this action to quiet title.

We also find the provisions of section 93-2507, R.C.M. 1947, are applicable. This section states:

"In every action for the recovery of real property, or the possession thereof, the person establishing a legal title to the property is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been under and in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title for five (5) years before the commencement of the action." (Emphasis added.)

The Hurlys have the burden of overcoming this presumption by proof to the contrary. See: Warren v. Warren, 127 Mont. 259, 261 P.2d 364; Norwegian Lutheran Church of America v. Armstrong, 112 Mont. 528, 118 P.2d 380.

Issue II. The trial court held the elements of adverse possession were not proved by the Hurlys. We agree.

The statutory requirements to establish adverse possession appear in section 93-2513, R.C.M. 1947, which states:

- 6 -

"In no case shall adverse possession be con-
sidered established under the provisions of
any section or sections of this code unless
it shall be shown that the land has been
occupied and claimed for a period of five
(5) years continuously, and the party or
persons, their predecessors and grantors, have,
during such period, paid all the taxes, state,
county, or municipal, which have been legally
levied and assessed upon said lands."

The determinative question in regard to this issue is whether

the Hurlys paid the taxes on the disputed property for a period

of five years. The Stephens called Alice Logan, a clerk in

the assessor's office of Flathead County, as a witness. She

testified as to the means by which the taxable valuation is

applied to a parcel of property:

"Q. Mr. Proud indicated that when you apply the
valuation which he puts together, to the real prop-
erty involved, that the real property is what is
set forth in the deed, in connection with any given
tract of land, is that correct? A. That is correct.

"Q. Do you in the Assessor's office pay any atten-
tion at all as to what may be between two fences,
for example? A. No Sir. We just use the descrip-
tion that is on the transfer as it comes to us or
on the cards that are printed.

"Q. On the deeds? A. Uh-huh."

The testimony is clear that the Stephens' deed defined

their parcel by means of a legal description of the boundary

lines. Therefore, the Stephens, not the Hurlys, paid the taxes

on the disputed piece of property. The assessment was made on the

basis of the legal description in the deed rather than an on-

site measurement of the area enclosed within the Hurly fence.

The Hurlys further argue that since they paid the person-

al property tax on the mobile home located on the disputed prop-

erty, they must have paid the tax on the property upon which it

rested. Such is not the case. Jim Proud, who is the Supervisor

for the Appraisal Board for the State Department of Revenue,

Flathead County, testified:

"Q. So if we are trying to determine whether or
not A, who has his trailer encroaching on B's

property has now been appraised by you, if he has been in fact been assessed for this portion of B's property in addition to his own by virtue of the fact that he is sitting there now, that is what the guts of this case is all about. You are not trying to make that determination in any way. The most value you are adding to A is the value of that trailer and not the ground upon which it sits? A. That is right.

"Q And you have already made the determination of the value of the ground upon which it sits, based on a legal description from the tract index, and it is based on the deed description, isn't it? A. That is right.

"Q. So even though this trailer of A is sitting on B's property, when you add that as an improvement to A's property, believing it to be A's property, the most that you did was add the value, the market value of the trailer, to the deed description of A's property? A. If we had placed it in the incorrect lot."

The district court was correct in its ruling that the Hurlys had not paid the taxes on the disputed strip of property, therefore the elements of adverse possession had not been established. The payment of taxes to prove title by adverse possession is a positive statutory requirement. Lowery v. Garfield County, 122 Mont. 571, 208 P.2d 478; Brannon v. Lewis and Clark County, 143 Mont. 200, 387 P.2d 706; Smith v. Whitney, 105 Mont. 523, 74 P.2d 450. Where the evidence shows that Hurlys paid taxes on the basis of the land description in the deed which does not include the strip of property in dispute, in absence of an agreement extending the boundary to include this strip, such payment does not constitute the payment of taxes on the disputed strip. Blayden v. Morris, 37 Idaho 37, 214 P. 1039; Johnson v. Buck, 7 C.A.2d 197, 46 P.2d 771.

Issue III. The Hurlys further argue the Marquardt survey was incorrect and the district court erred in establishing the boundary line as set forth in the survey. Hurlys contend the original Government Land Office (GLO) survey was not used as the basis or point or origin for the Marquardt survey and, further, the GLO survey and the Marquardt survey are inconsistent.

We find no merit in either contention. The location of corners and lines established by the government survey is conclusive and the true corner of a government subdivision of a section of land is where the United States surveyors in fact established it, whether such location is right or wrong, as may be shown by a subsequent survey. Vaught v. McClymond, 116 Mont. 542, 155 P.2d 612.

Marquardt determined that the sole remaining official GLO monument which controls the property in question is located at the southeast corner of Section 24. The GLO survey notes show that monuments were originally placed at the mid-section line of the south boundary of Section 24 and at the lake shore of Whitefish Lake. Marquardt testified that the former monument is now covered by the Big Mountain highway and the latter no longer can be located.

Marquardt used as the basis for his survey two corners located upon the south line of Section 24 which had been established by previous surveys in the area. Corner records had been filed on these corners and the testimony is clear that the surveys which located these corners were based on and consistent with the original GLO survey. Hurlys contend that since the surveyor did not go back to the official GLO monument at the southeast corner of Section 24, the survey is not based on the GLO survey as required by law. But the record is clear that the Marquardt survey is based upon and consistent with the GLO survey and that is all that is required.

Hurlys further argue the GLO survey and the Marquardt survey are inconsistent and Marquardt chose to ignore the GLO survey. This is not borne out by the transcript:

> "Q. (by counsel for Hurlys) In other words, you disregarded that for that reason, that you felt they were probably wrong with their bearings? A. I didn't disregard it. I chose

- 9 -

to accept the controlling elements of the survey. Now, in a GLO survey the controlling elements are the original corners, which were set, or the locations for those corners. Now, they control over bearing and distance. And so in retracing the survey, you use the monuments, or if you don't have the original monuments, you use what is the best evidence as to the location of those corners. And I consider the best evidence of the location of those two corners to be the monumented corners which are of record and have been used by other surveyors for at least 21 years, as far as I know."

There was sufficient evidence before the district court to support its finding that the survey had been properly made and the lines properly located. In this regard the law in this jurisdiction was aptly stated in Myrick v. Peet, 56 Mont. 13, 22, 180 P. 574, where the court said:

" * * * The court below, short of being actually upon the ground, following step by step the witness in examining the monuments which the surveyors testified bore the official stamp of identification, was in a peculiarly advantageous position to get the psychological effect of the testimony given by the witness. They were all fresh from the locus in quo, and gave the court first impressions by pointing out upon the maps the objects by which the definite location of the monuments could be determined. Before the judgment of the court below reached by such means, and presumptively correct, can be impeached, it must be made clearly to appear that some fact properly for the consideration of the jury was arbitrarily determined by the court * * *."

The judgment of the district court is affirmed.

_____
                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

- 10 -