No. 80-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

LORETTA E. KING, personal representative
of the Estate of ROY M. KING, deceased;
and LORETTA E. KING et al.,

                    Plaintiffs and Appellants,

    vs.

ROSEBUD COUNTY, a local government unit
in the State of Montana,

                    Defendant and Respondent.

---

Appeal from:   District Court of the Sixteenth Judicial District,
               In and for the County of Rosebud.
               Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

    For Appellants:

        Olsen, Christensen and Gannett, Billings, Montana
        Paul G. Olsen argued, Billings, Montana

    For Respondent:

        John S. forsythe, County Attorney, Forsyth, Montana
        Fillner and Pitet, Billings, Montana
        Russell K. Fillner argued, Billings, Montana

---

                        Submitted:  April 23, 1981

                        Decided:  July 22, 1981

Filed:  JUL 22 1981

Thomas J. Kearney
_____
                    Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Appellants/plaintiffs are the personal representative and widow of Roy M. King, and the ex-wife of Roy M. King. They brought this action in Rosebud County, before the Honorable Alfred B. Coate, seeking to quiet title, in favor of themselves and the estate, to a royalty interest of 6.25 percent in all oil, gas and minerals recoverable from certain tracts of land.

Nonjury trial was held on March 11, 1980. The plaintiffs now appeal from the judgment of the District Court in favor of the County.

The following issues are presented for review:

1. Did the District Court err in concluding that the County took valid title to the lands as a result of tax sale proceedings?

2. Did the District Court err in concluding that the plaintiffs' action is barred by doctrines of estoppel, laches, or by asserted statutes of limitation?

We hold the District Court did err on both issues, and reverse the District Court's judgment.

FACTS:

This action concerns title to royalty interests in two tracts of land, a "King" tract and a "Stillwell" tract. Both were purchased by Roy M. King from the County after the County had taken tax title to both. Two other tracts of land will also be mentioned, a "Bentley" tract and a "LaFurge" tract. King bought those parcels at about the same time and in a similar manner. The parties rely for authority upon the conduct and outcome of litigation over the Bentley and LaFurge lands.

Roy King, Albert Stillwell, May Bentley and William

-2-

LaFurge each owned certain separate lands in Rosebud County. All defaulted on payment of taxes. The County purchased all of the tracts at tax sales held in the late 1930's and 1940's. The procedure followed by the County in issuing tax deeds to itself forms the substance of this appeal, and will be described later.

Albert Stillwell died on May 24, 1937, in Pennsylvania, before any of the events described here occurred. His widow served as executrix of the Stillwell estate. The plaintiffs have submitted evidence of the Stillwell probate proceedings held in Pennsylvania, which the County cites in support of its argument that Stillwell and his heirs long ago waived or abandoned any claim which they might have had to the royalty interest in the Stillwell tract, so that King, who took his claimed interest in the Stillwell tract from Stillwell's heirs, must be held to have acquired no interest in royalties from the Stillwells.

The County took tax title to the King tract on September 1, 1939, to the Stillwell tract on January 15, 1944, and to the Bentley tract probably some time in the early 1940's.

Roy King later purchased from the County all of the tracts. He was issued a quitclaim deed by the County to the Stillwell tract on March 7, 1944. King received a quitclaim deed to his own former tract on September 21, 1944. He also received quitclaim deeds for the Bentley and LaFurge tracts. Each of the quitclaim deeds issued to King contained the County's reservation of a royalty interest of 6.25 percent of all oil, gas and minerals recovered and saved from the lands.

In order to conclusively establish his title to the tracts, King filed an action in Rosebud County in 1947 to quiet title to all of the tracts and to other lands which he

had purchased. Named as defendants, among others, were Albert Stillwell, May Bentley, Rosebud County and William LaFurge. The District Court file for the quiet title action was introduced into evidence. (Civil Cause No. 5475, in the Sixteenth Judicial District, Rosebud County.)

Judgment by default was entered against all defendants on August 31, 1948, the court decreeing that full and complete title to the King, Stillwell, Bentley and LaFurge tracts was quieted in King. No mention was made in the decree of the County's reservations.

The parties agree that the County was not properly served in the 1947 action. Because the District Court did not obtain jurisdiction over the County, the County is not now bound by the default decree entered against it.

That part of the decree which quieted title to the Bentley tract in favor of King was later found void as against May Bentley by the Ninth Circuit Court of Appeals. Bentley v. Rosebud County, Montana (1956), 230 F.2d 1, cert. den., 351 U.S. 984, 76 S.Ct. 1051, 100 L.Ed. 1498. The plaintiffs rely on the rationale of that federal decision to support their claim that the county treasurer did not have jurisdiction to issue the tax deeds to the tracts involved here, claiming that the deeds are void and the County's subsequent reservations invalid.

PERTINENT HISTORY OF THE BENTLEY & LAFURGE TRACTS

Oil was discovered on the Bentley tract, probably in the late 1940's or early 1950's. May Bentley, as a resident of Wisconsin, brought an action in federal district court to quiet title to her lands and royalty interests.

In Bentley v. Rosebud County, Montana, supra, the Ninth Circuit Court of Appeals reversed the lower court, and held the tax sale by which the County took title to the Bentley

-4-

tract had been fatally defective, rendering the tax deed void.

Relying on the case of Perry v. Maves (1951), 125 Mont. 215, 233 P.2d 820, the ninth circuit court held that a county treasurer's jurisdiction to issue tax deeds rests solely upon the affidavits of service which are required by statute to be filed with him; and, in determining the sufficiency of tax title proceedings, the record before the county treasurer alone may be considered, and defects or omissions may not be corrected or supplied by anything outside the record. The court found that neither the notice of application for tax deed nor the affidavit and proof of service, which were filed with the county treasurer, showed whether service on Bentley by publication had been accomplished 60 days prior to the issuance of the tax deed to King. Bentley, 230 F.2d 4. In the absence of an affirmative showing to the treasurer of compliance with all the requirements of the statutes, the tax deed was held to be void, and the subsequent royalty reservation by the County in its quitclaim deed to King was declared invalid. Bentley, 230 F.2d 7.

While the Bentley quiet title action was on appeal to the ninth circuit court, a different action was brought concerning the LaFurge tract, which King had purchased from the County. The second action, LaFurge v. King, brought in the District Court for Rosebud County, is mentioned only because it generated an exchange of letters between the then county attorney and the lawyer for King. The County argues that the letters constitute admissions by King that the County's royalty interests in the King and Stillwell tracts are valid.

Judgment in the LaFurge action was entered on April 15, 1957, after the Bentley case had been decided by the ninth circuit. The judgment recognizes the County's reservations.

-5-

The County relies on the letters, actions and admissions of King, made in regard to the Bentley and LaFurge cases, as support for the County's defenses of estoppel and laches. We do not set forth the acts and admissions in detail because we hold the defenses of estoppel and laches inapplicable in any event.

PROCEDURAL HISTORY OF THIS APPEAL

In March of 1956, Roy King conveyed one-half interest in all minerals in and under the King and Stillwell tracts to his ex-wife, Celia I. Shock, as part of a property settlement agreement. Shock is the other named plaintiff in this action.

Roy King died in December 1975. In November 1975, oil had been discovered on the King and Stillwell tracts. All proceeds due on the royalty interests in dispute have been held in escrow by the oil producers pending the outcome of this case.

On April 2, 1976, and again on February 18, 1977, the heirs of Albert Stillwell quitclaimed all their right, title and interest in the Stillwell tract to the plaintiffs.

King's widow and his ex-wife filed their quiet title complaint on November 15, 1977. Ultimately the County filed an amended answer denying all allegations of the complaint, alleging the validity of the tax deeds and of the reservations of royalty interests, and setting forth affirmative defenses of estoppel, laches, and statutory bar to the action under former §§93-2503 to 2505, R.C.M., 1947, now sections 70-19-304, 70-19-401 and 402, MCA, respectively.

Trial was held on March 11, 1980. The only purpose of the trial was to introduce exhibits into evidence.

The District Court then adopted the County's proposed findings and conclusions, concluding that the tax title pro-

ceedings had been validly conducted and that this action was barred by estoppel, laches and by the statutes of limitation. Plaintiffs appeal.

## TAX SALE PROCEEDINGS

King Tract:  A notice of application for tax deed and an affidavit and proof of service were filed with the county treasurer pursuant to statute prior to issuance of the tax deed by the treasurer to the County.

The notice of application for tax deed states, "the period within which the . . . above described lands and premises may be redeemed from the sale to pay the taxes for the year 1931 has long since expired, and . . . the . . . [clerk and recorder] will, on the 1st day of Sept., 1939, which will be at least sixty (60) days after the service of this notice upon you, make application to the Treasurer of Rosebud County for tax deed to be issued to it as provided by law." It is dated June 14, 1939, and is directed to King and to two mortgagees.

The affidavit and proof of service states, inter alia, that the clerk and recorder served copies of the above-mentioned notice upon King and the mortgagees by mail, and that "the receipts for letters, showing delivery thereof, are on file in the Office of the County Clerk of Rosebud County, Montana . . ."  The affidavit also states that the notice was published in the local newspaper for two consecutive weeks, "as is shown by the Affidavit of Publication which is on file in the office of the County Clerk of Rosebud County, Montana . . ."  The affidavit is dated August 3, 1939, less than one month prior to the date on which the notice states that application would be made.  A tax deed for the King tract was issued to the County on September 1, 1939.

Nothing on the face of the record before the treasurer shows the date on which notice was actually given to King. The treasurer could not have known if notice had actually been given more than 60 days prior to the date he issued the deed, as required by the statute set forth below.

Stillwell Tract: Albert Stillwell was served by mail in Pennsylvania. His widow signed for the letter.

The form of the notice of application for tax deed and the affidavit and proof of service, filed with the treasurer, are identical to those regarding the King tract, except the affidavit does not state that the notice was published. The notice is dated October 18, 1943, and the affidavit January 5, 1944. No date of mailing the notice is stated, and the receipt for the letter is referred to as being filed with the county clerk. The tax deed was issued January 15, 1944. Again, the treasurer could not have known whether timely notice in fact had been given.

### DISCUSSION

The following statutes were applicable at the time the tax deeds were issued to the County:

> "Notice of application for tax deed. The purchaser
> of property sold for delinquent taxes . . . must,
> . . . at least sixty (60) days before he applies for
> a deed, serve upon the owner of the property purchased,
> if known, . . . a written notice, stating that said
> property, or a portion thereof, has been sold for
> delinquent taxes, giving the date of sale, the amount
> of property sold, the amount for which it was sold,
> the amount due, and the time when the right of redemp-
> tion will expire, or when the purchaser will apply for
> a tax deed, and the owner of the property, . . . has
> the right of redemption indefinitely until such
> notice has been given . . . Notice of any owner,
> . . . shall be given by registered letter addressed to
> . . . [the owner] at the post office address of said
> owner . . . In case of unoccupied property . . .
> such notice must be by registered mail deposited in
> the post office, addressed to any known owner resid-
> ing in or outside of said county with the postage
> thereon prepaid . . . at least sixty (60) days before
> the purchaser applies for such tax deed . . ."

-8-

§2209, R.C.M., 1935 (later codified as former section 84-4151, R.C.M., 1947, now section 15-18-202, MCA.)

> "Affidavit showing notice given--sum allowed for service of notice and making affidavit. No deed of the property sold at a delinquent tax sale must be issued by the county treasurer . . . to the purchaser of the property, until after such purchaser shall have filed with the treasurer . . . an affidavit showing that the notice hereinbefore required to be given has been given as herein required, which said affidavit must be filed by the treasurer as other files, papers, and records kept by him in his office. . ." §2212, R.C.M. 1935 (later amended and codified as former section 84-4156, R.C.M., 1947, now section 15-18-204, MCA.)

This Court construed the above statutes in Perry v. Maves (1951), 125 Mont. 215, 233 P.2d 820. In Perry, the affidavit filed with the treasurer of McCone County stated as follows:

> "That on Feb. 13, 1940, the . . . [county clerk] filed in the office of the County Clerk and Recorder of McCone County, Montana, an Affidavit and Proof showing the manner in which said Notice of Application for Tax Deed was given, all as provided by the laws of the State of Montana, to which Affidavit and accompanying proofs you are hereby referred." 125 Mont. 217, 233 P.2d 821.

This Court held as follows:

> "The provisions of section 2212, Revised Codes of Montana 1935, were mandatory and prohibitory. One mandate was that an 'affidavit must be filed by the treasurer . . . in his office.' This mandate plainly required that an affidavit must be filed in the county treasurer's office. Another mandate of the statute was that the affidavit so filed in the county treasurer's office must show 'that the notice hereinbefore required to be given has been given as herein required.' The notice so required to be given was the notice expressly provided for and required by section 2209, Revised Codes of 1935. The provisions of the statute (2212) expressly forbade and prohibited the issuance of a tax deed by the county treasurer until after the above mentioned affidavit had been filed in the county treasurer's office. The prohibition was that no deed of the property sold at a delinquent tax sale must be issued by the county treasurer to the purchaser of the property until after such purchaser shall have filed with the treasurer an affidavit showing the required facts . . . Emphasis supplied."

-9-

". . .

"The affidavit provided for in section 2212, supra, must state the essential facts, as distinguished from mere conclusions, showing that the notice required to be given by section 2209, supra, has been given and until such affidavit was filed in his office showing such facts the county treasurer was denied the authority and power to issue a valid deed to the purchaser of the property so sold at delinquent tax sale.

"Proceedings on tax sales are in invitum. Every essential or material step prescribed by the statute must be strictly followed. If the requirements of the statute are not strictly followed the sale may be avoided. In the county treasurer's proceedings to sell the land there is no distinction recognized between the mandatory and directory requirements of the statute. The county treasurer must act as the statute directs. Otherwise he acts without authority and the purported sale which he assumes to make is invalid. This holds true even though the requirement with which the county treasurer failed to comply was not one enacted for the protection of the owner of the land.

"'. . . "In determining the sufficiency of tax title proceedings, the records alone can be considered and defects or omissions may not be corrected or supplied by anything dehors the record." . . . [citation]'

"'This is necessarily so, since section 2209, after specifying how notices shall be given, provides as follows: "The owner of the property . . . has the right of redemption indefinitely until such notice has been given." Certainly "such notice" does not mean "some notice" or "any notice," and neither the county treasurer nor members of the judiciary may substitute their own ideas as to what notice should be considered the equivalent of or substitute for the notice required by the legislature.' . . ." Perry, 125 Mont. 216-218, 233 P.2d 820-821.

The reference in the Perry affidavit to documents filed with the county clerk was held insufficient to confer jurisdiction upon the treasurer to issue a tax deed. The tax deed was held void.

Just as in Perry, the references in the instant affidavits to receipts for the mailed notices and to the affidavit showing publication of the King notice, stated as being filed with the county clerk, were also to documents outside the record before the treasurer. The affidavits filed with the treasurer must be held insufficient to show proof of

service of notice on King and Stillwell.

Because the treasurer could not know from the record whether notice had been given within the statutory period, he had no authority to issue the deed.

The County cites Milne v. Leiphart (1946), 119 Mont. 263, 174 P.2d 805, and Cavitt v. Seirson (1946), 119 Mont. 437, 175 P.2d 767, in support of its argument that the affidavits filed with the treasurer were sufficient to confer jurisdiction to issue the tax deeds. We agree, however, with the ninth circuit court's interpretation of Milne in Bentley v. Rosebud County, supra, 230 F.2d 4-5. It is not clear in Milne whether the county treasurer had had before him in the record the date on which notice was served. 119 Mont. 269-270, 174 P.2d 808-809. To the extent that Milne conflicts with the holding here or in Perry on the question of sufficiency of the affidavit, the Milne holding is overruled.

Cavitt, on the other hand, is distinguishable on the facts. That case did not concern the question of sufficiency of a particular affidavit; rather, the question involved was whether any affidavit had been filed at all. The court there held that a tax deed gives rise to statutory presumptions that official duty has been performed and the law has been obeyed. The defendant there failed to carry his burden of overcoming the presumptions by failing to prove that no affidavit had been filed. 119 Mont. 440-442, 175 P.2d 769. The plaintiffs in this case have shown that the filed affidavits were incomplete and therefore defective, and that the tax deeds are void for lack of jurisdiction in the treasurer to issue them. The plaintiffs here have overcome the presumptions cited in Cavitt.

The District Court concluded as follows: "The tax title proceedings conducted by the defendant, Rosebud County were valid and sufficient to divest Roy M. King and Albert J. Stilwell, and his estate, of any title in and to said lands described in plaintiff's complaint." Such a conclusion is clearly incorrect from the evidence; the judgment based thereon must be reversed.

AFFIRMATIVE DEFENSES

The County asserted defenses of estoppel, laches and statutes of limitation. The estoppel and laches defenses are predicated mainly upon the lapse of time between the tax sales and the filing of this action. As support for the defenses, the County relies on the acts and representations of King and his lawyer in regard to the Bentley and LaFurge cases previously mentioned. The District Court concluded that King and his heirs are barred by laches and estoppel to deny the County's reservation. The court also used waiver/abandonment type language in discussing plaintiffs' predecessors' (the Stillwells') acknowledgement and recognition of the County's interests. (Conclusion No. 9; Conclusion No. 4)

We hold that the court's conclusions are not supported by the findings, because one of the required elements of each asserted defense is lacking.

Estoppel requires as one of its elements a detrimental reliance on another's conduct. Matter of Shaw (1980), ___Mont. ___, 615 P.2d 910, 914, 37 St.Rep. 1480, 1484. There is no evidence that the County has done anything but sit back and wait for any royalties that might come. Estoppel cannot be found where the County has incurred no detriment, nor changed its position. The County may lose the benefit of the royalty money, but it would not be in a worse position

-12-

than before the tax sales.

Laches requires a party to sleep on his rights for such a period as to render enforcement inequitable. Mountain View Cemetery v. Granger (1978), 175 Mont. 351, 358, 574 P.2d 254, 258; Davis v. Steingruber (1957), 131 Mont. 468, 470-471, 311 P.2d 784, 785. Length of time within which rights are not asserted is not the only consideration. Matter of Estate of Wallace (1980), ___Mont.___, 606 P.2d 136, 139-140, 37 St.Rep. 158, 163. Royalties have been earned only since 1975 which does not result in a period sufficient to show that enforcement would be inequitable. The County has incurred no detriment by simply waiting to see if any oil or minerals are produced.

The County also asserted a statute of limitations defense, based on former §§93-2503, 2504 and 2505, R.C.M., 1947, now sections 70-19-304, 401 and 402, MCA.

Section 70-19-304, MCA, is an old section. Code annotations reveal no Montana cases which construe it. However, it is not applicable here on its face, because the ten-year period starts to run only after a competent court declares the letters patent or the grants void. Appellants seek just such a declaration in this case.

Section 70-19-401 and 402 are "adverse possession" statutes. The statutes are also inapplicable. The record discloses no evidence to show that plaintiffs, who have established legal title, were not "seized or possessed" of the real property. The County has failed to overcome the presumption that plaintiffs were in possession within the required period. Former §93-2507, R.C.M., 1947, now section 70-19-404, MCA. Warren v. Warren (1953), 127 Mont. 259, 262, 261 P.2d 364, 365. Even if plaintiffs or their predecessors were not in actual possession of the properties

within the period, they are deemed to have been "seized" of the properties based on the title they held. Stephens v. Hurly (1977), 172 Mont. 269, 274-75, 563 P.2d 546, 549-50. The County failed to prove that it had fulfilled all the elements of adverse possession, necessary to establish title in itself under the above statutes. Therefore, the statutes of limitation are not applicable.

The District Court's conclusion as to statutory bar is incorrect. We do not discuss plaintiffs' contention that doctrines of estoppel, laches, and statutes of limitation cannot be used to give life to an otherwise void tax deed because we find the defenses do not apply in any event.

CONCLUSION

It is not necessary to discuss other asserted issues. The County's tax deeds are void for lack of jurisdiction in the treasurer to issue them. Having received nothing under void deeds, the County owned nothing from which it could reserve royalty interests.

We have determined that plaintiffs are the owners of the royalty interests in the King and Stillwell tracts. We reverse the judgment of the District Court and direct the entry of judgment in accord with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-14-