FILED

March 1 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0328

DA 15-0328

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 47

BARBARA BROWN BERGUM, RICHARD BROWN,
JEANNETTE STUDER, CAROLINE Y. HOUSTON,
KATHY F. ARNOUX, ETHEL GENTRY,

        Plaintiffs and Appellants,

    v.

MUSSELSHELL COUNTY, a quasi-municipal corporation;
and the assignees, and creditors of the above named
entity; and all other UNKNOWN persons claiming, or
who might claim any right, title estate or interest in,
or lien or encumbrance upon, the real property described
in the complaint, or any thereof, adverse to plaintiffs'
ownership, or any cloud upon plaintiffs' title thereto,
whether such claim or possible claim be present or
contingent, including any claim or possible claim of
dower, inchoate or accrued,

        Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
                In and For the County of Musselshell, Cause No. DV 07-28
                Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Jacquelyn M. Hughes, Hughes Law PLLC, Billings, Montana

        For Appellees and Cross-Appellants:

        R. Allan Payne, Marc G. Buyske, LL.M., Doney Crowley P.C., Helena,
        Montana

                       Submitted on Briefs:  January 20, 2016
                               Decided:  March 1, 2016

Filed:

                                     Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Barbara Brown Bergum, Richard Brown, Jeannette Studer, Caroline Y. Houston, Kathy F. Arnoux, and Ethel Gentry (collectively Bergum) filed this action to quiet title in the Fourteenth Judicial District Court, Musselshell County, against Musselshell County. Both parties moved for summary judgment. The District Court granted judgment in favor of Musselshell County. Bergum appeals. Musselshell County cross-appeals from an order regarding attorney fees and costs. We affirm.

¶2 Bergum and Musselshell County raise several issues on appeal. We conclude the following issues are determinative:

> *1. Did the District court err in concluding that the statute of limitations in § 2214, RCM (1935), barred Bergum's quiet title action?*
>
> *2. Did the District Court err in denying Musselshell County its attorney fees under § 25-7-105, MCA?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The controversy in this case centers on the disputed ownership of subsurface mineral rights to coal-rich land located in Musselshell County (Subject Real Property).[1] The Subject Real Property has a lengthy and intricate history of ownership. Beginning in 1873, the United States Congress approved appropriations of vacant coal lands of up to 160 acres, provided the applicant was at least twenty one years old, a United States citizen, and paid $10 per acre.[2] In 1908, both Lincoln Wescott and Annie Wescott

---

[1] The legal description of the Subject Real Property is NW 1/4 W 1/2 SW 1/4, SE 1/4, SW 1/4, SW 1/4 SE 1/4 of Section 2, Township 6 North, Range 27 East P.M.M.
[2] *See* 30 U.S.C.S. § 71 (LexisNexis, Lexis Advance through Pub. L. No. 114-15, approved December 28, 2015 (derived from Act of March 3, 1873, 17 Stat. 607 (1873)).

2

received patents for adjacent parcels of 160 and 160.58 acres, for which they paid $1,600 and $1,605.80 respectively. Also in 1908, Lincoln Wescott conveyed his patented 160 acres to Annie Wescott. This combined 320.58 acres comprises the Subject Real Property.

¶4 In 1935, Annie Wescott, now Annie Owen, conveyed the Subject Real Property to Charles Wilson. In 1936, county-assessed taxes on the Subject Real Property were not paid and the County Assessor listed the taxes as delinquent. The taxes remained delinquent until 1941 when Charles Wilson payed a portion of the taxes owed and redeemed the property. Critically, the Certificate of Redemption of Property Sold for Taxes, dated March 5, 1941, describes the Subject Real Property Charles Wilson redeemed and states "surface rights only." From this point, the Subject Real Property's subsurface rights (Subsurface Rights) and surface rights (Surface Rights) are severed. On the same day Charles Wilson redeemed the "surface rights only," he conveyed his interest in the Subject Real Property and other property to E.K. Woodley and E.C. Woodley.

¶5 The Subsurface Rights were not redeemed in 1941. Subsequently, the unredeemed portion of the original tax delinquency, which began in 1936, remained delinquent until 1945 and was listed under Charles Wilson's name. In 1945, Musselshell County applied for a tax deed. Affidavits of service, filed with both the Musselshell County Clerk and Recorder and the Treasurer's office, verify that the County provided notice of an impending tax sale by publication and registered mail. In 1946, Musselshell County held a tax sale where it purchased the Subsurface Rights for $251.32. The

3

Treasurer of Musselshell County issued a tax deed to Musselshell County on February 5, 1946, for the Subject Real Property "less surface which has been redeemed."

¶6     Regarding the Surface Rights after 1941, another tax delinquency occurred in 1945 and was listed under E.K. Woodley's name. Also in 1945, E.K. Woodley and E.C. Woodley conveyed their interest in the Subject Real Property and other property to Francis Brown, Murry Brown, and Jim Brown. Still in 1945, Jim Brown and Murry Brown conveyed their interests to Francis Brown. In 1950, Francis Brown conveyed his interest in the Subject Real Property to Roy Gentry and Ethel Gentry. In this conveyance, Francis Brown attempted to retain a fifty percent mineral interest in the Subject Real Property (Mineral Right of Entry).

¶7     In 1955, Roy Gentry and Ethel Gentry filed an action to quiet title to the Subject Real Property. The title was quieted in their favor by decree recorded on January 6, 1956, but an exception was listed for Musselshell County's interest in the Subsurface Rights. The decree stated Roy Gentry and Ethel Gentry "are entitled to a decree of this Court quieting title as to said real estate" except for "the interest of Musselshell County, Montana, in and to the minerals, including coal, pertaining to the [Subject Real Property], together with a right of entry on said lands." Francis Brown, who claimed to have maintained a Mineral Right of Entry in the Subject Real Property, was not named as a party in this quiet title proceeding.

¶8     Finally, in 2007, Bergum initiated an action against Musselshell County to quiet title to the Subject Real Property as successor in interest to the Mineral Right of Entry Francis Brown purportedly retained when he transferred the Subject Real Property in

4

1950. Musselshell County and Bergum filed competing motions for summary judgment in 2012. On October, 3, 2012, the District Court held a hearing on the parties' respective motions for summary judgment. Over two years later, on December 19, 2014, the District Court granted Musselshell County's motion for summary judgment. On April 13, 2015, the District Court entered an order awarding costs, but not attorney fees. On April 28, 2015, the District Court entered its judgment in favor of Musselshell County from which Bergum appeals. Musselshell County cross-appeals from the District Court's order regarding attorney fees and costs.

## STANDARD OF REVIEW

¶9 A district court's grant of summary judgment is reviewed de novo. *Omimex Can., Ltd. v. State*, 2015 MT 102, ¶ 11, 378 Mont. 490, 346 P.3d 1125 (citation omitted). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). "We review a district court's conclusions of law for correctness." *Kiser v. Kiser*, 2015 MT 315, ¶ 7, 381 Mont. 368, 360 P.3d 1139 (citation omitted).

¶10 If legal authority exists for a district court to award attorney fees, then a district court's grant or denial of attorney fees is a discretionary ruling which we review for abuse of discretion. *Swapinski v. Lincoln Cnty.*, 2015 MT 275, ¶ 8, 381 Mont. 138, 357 P.3d 329 (citation omitted).

**DISCUSSION**

¶11    *1. Did the District court err in concluding that the statute of limitations in § 2214, RCM (1935), barred Bergum's quiet title action?*

¶12    At the District Court level, Bergum challenged the sufficiency of the tax deed procedure used by Musselshell County to purchase the Subject Real Property's Subsurface Rights in 1946. The District Court, in its order granting Musselshell County summary judgment, concluded that "[e]ven if a problem existed with respect to Musselshell County's tax deed procedure, the statute of limitations set forth in R.C.M. (1935) Section 2214 bars any claim by [Bergum] based on such problem(s)."

¶13    Bergum argues the District Court erred in applying § 2214, RCM (1935), to conclude her quiet title action was barred. Bergum claims that § 2214, RCM (1935), by its own language, does not apply for two alternative reasons; either because 1) "no taxes were delinquent on said lands" or 2) "redemption had been made from said tax sale." Section 2214, RCM (1935). Essentially, Bergum argues the taxes assessed on the Subject Real Property were unconstitutional and, because they were never legally assessed, could never have become delinquent. Alternatively, Bergum argues that allowing a taxpayer to redeem only a portion of tax-delinquent property is unconstitutional and, therefore, asserts that Charles Wilson's redemption of the property in 1941 effectively redeemed the entire Subject Real Property, not just the "surface rights only." Under either alternative, Bergum maintains that § 2214, RCM (1935), does not apply or bar her quiet title action.

¶14    In response, Musselshell County argues § 2214, RCM (1935), applies and bars Bergum's action because the taxes assessed on the Subject Real Property were

6

constitutional at the time they were assessed under Article 12, Section 3, of the 1889 Montana Constitution, which required mining claims be taxed. Further, Musselshell County points to § 2211, RCM (1935), entitled "Redemption from tax sales—piecemeal redemption" as support for its proposition that piecemeal redemption was constitutional and statutorily authorized. The District Court agreed with Musselshell County and concluded § 2214, RCM (1935), barred Bergum's current quiet title action. We agree with the District Court and Musselshell County.

¶15 The law applicable at the time the taxes were assessed and the sale occurred must be used to determine the validity of the taxes and the procedure used. *See Fariss v. Anaconda Copper Mining Co.*, 31 F. Supp. 571, 576 (D. Mont. 1940); *King v. Rosebud Cnty.*, 193 Mont. 268, 275, 631 P.2d 711, 715 (1981) (The court looked to statutes in force in 1939 to determine the validity of tax sale proceedings which occurred in 1939). Here, this Court will look to the constitution and statutes in force at the time the challenged assessments and tax sale occurred.

¶16 Section 2214, RCM (1935), entitled "Of what deed is evidence—actions concerning," provides that a duly acknowledged or proved deed is conclusive evidence of all other proceedings from the tax assessment up to the execution of the deed. Further it reads, in pertinent part:

> [N]o action can be maintained to set aside or annul a tax deed or to assert a title hostile to a tax deed upon any ground whatever, whether on the ground that said deed, or any prior proceeding, was irregular or void, other than that the deed was void because no taxes were delinquent on said lands, or because redemption had been made from said tax sale, unless the action is commenced within one year from and after the date of the issuance of said tax deed.

7

Section 2214, RCM (1935). Section 2214, RCM (1935), sets out a one-year statute of limitations and outlines two exceptions to its application. The one-year limitations does not bar an action if the "deed was void because no taxes were delinquent on said lands," or "because redemption had been made from said tax sale." Section 2214, RCM (1935).

¶17 In its order granting Musselshell County summary judgment, the District Court concluded that the 1946 deed was not void because the taxes assessed on the property and partial redemption of the "surface rights only" were proper. It follows that if the two exceptions to the statute of limitations do not apply, § 2214, RCM (1935), applies, and bars Bergum's claim. If the District Court's conclusion that the exceptions do not apply is correct, Bergum's predecessors in interest had until February 5, 1947, or one year from the issuance of the tax deed to Musselshell County, to initiate an action to quiet title to the Subject Real Property's Subsurface Rights. Instead, Bergum initiated this action by filing a complaint to quiet title on April 4, 2007, or over 60 years after the deadline imposed by § 2214, RCM (1935). We review the District Court's conclusions that the exceptions of § 2214, RCM (1935), do not apply for correctness. We address their application in turn:

   a. *Exception 1: "deed was void because no taxes were delinquent on said lands"*

¶18 Bergum relies on *Northern Pacific Railway v. Musselshell County*, 54 Mont. 96, 169 P. 53 (1917), to support her contention that the taxes Musselshell County assessed on the Subsurface Rights after the Surface Rights were redeemed, from 1941 to 1945, were unconstitutional and, therefore, void. Bergum contends *Northern Pacific Railway* supports her proposition that "taxation of an undeveloped mineral estate was

8

unconstitutional." We disagree. Article 12, Section 3, of the 1889 Montana Constitution states:

> All mines and mining claims, both placer and rock in place, containing or bearing gold, silver, copper, lead, coal or other valuable mineral deposits, after purchase thereof from the United States, shall be taxed at the price paid the United States therefor, unless the surface ground, or some part thereof, of such mine or claim, is used for other than mining purposes, and has a separate and independent value for such other purposes, in which case said surface ground, or any part thereof, so used for other than mining purposes, shall be taxed at its value for such other purposes.

This constitutional provision was interpreted by the Court in *Northern Pacific Railway* and *Hinz v. Musselshell County*, 82 Mont. 502, 267 P. 1113 (1928). It was interpreted again in *Superior Coal Co. v. Musselshell County*, 98 Mont. 501, 41 P.2d 14 (1935), which, after discussing both *Northern Pacific Railway* and *Hinz*, held that "one who has purchased a mining claim from the United States is estopped from denying that it is a mining claim." *Superior Coal Co.*, 98 Mont. at 514, 41 P.2d at 20. Further, "[f]or the purpose of taxation, coal mining claims, lode mining claims and placer mining claims alike are governed by the provisions of the Constitution." *Superior Coal Co.*, 98 Mont. at 514, 41 P.2d at 20. The Court held that the taxable value of property is appropriately set by the constitution at the price paid for the property. *Superior Coal Co.*, 98 Mont. at 515, 41 P.2d at 20. The risk that the property is not as valuable as the patentee paid, or worthless, is immaterial to the constitutionality of this scheme of taxation. *Superior Coal Co.*, 98 Mont. at 515, 41 P.2d at 20. Finally, the Court concluded that the "surface ground by itself is not taxed at any value; it is part of the mine; it is presumed that it has no value except for use in working the mine. When the surface ground of a mining

9

claim, or some part thereof is used for some purpose other than mining, and the owner of the mining claim sells that surface . . . he is still the owner of the mining claim; all he has sold is the newly created estate 'which in the eye of the law, is regarded as independent of the original estate.'" *Superior Coal Co.*, 98 Mont. at 521, 41 P.2d at 23.

¶19     Here, Bergum does not dispute that Lincoln Wescott and Annie Wescott applied for and received coal patents for lands that now constitute the Subject Real Property. Applying *Superior Coal Co.* to the case at bar, Bergum is estopped from denying the Subject Real Property is a mining claim and can be taxed as such. Lincoln Wescott and Annie Wescott paid the United States a combined $3,205.80 for the Subject Real Property and the County Assessor gave it a taxable value of $3,207. *Superior Coal Co.* held that the taxable value should be set by what was paid for the mining claim and is constitutionally assessed on the minerals, even if undeveloped. Additionally if the surface of a mining claim is sold, it is legally separate, and may also be taxed. The taxes assessed on the Subsurface Rights from 1941 to 1945 were constitutional and valid. The validity of the taxes assessed disproves Bergum's argument that no taxes were delinquent. Instead, the taxes were validly assessed and delinquent because they were unpaid. The first exception to § 2214, RCM (1935), does not apply.

   b. *Exception 2: "redemption had been made from said tax sale."*

¶20     Bergum argues that Musselshell County's practice, which allowed Charles Wilson to redeem only a portion of the Subject Real Property in 1941, was illegal. Bergum contends that Charles Wilson's redemption in 1941 was for the entire Subject Real Property, not just for the "surface rights only," as the redemption document states.

10

Bergum claims that the Subject Real Property was fully redeemed in 1941 and, as a result, the tax deed issued to Musselshell County in 1946 for the Subsurface Rights was invalid. A coal patent "carries with it the title to the surface included within the lines of the mining location, as well as to the land beneath the surface." *Hansard Mining, Inc. v. Mclean*, 2014 MT 199, ¶ 20, 376 Mont. 48, 335 P.3d 711; *citing Deffeback v. Hawke*, 115 U.S. 392, 406, 6 S. Ct. 95, 101 (1885). At the time Charles Wilson partially redeemed the Subject Real Property in 1941, § 2211 RCM (1935), entitled "Redemption from tax sale—piecemeal redemption," explicitly authorized property owners to partially redeem their property from a tax sale. If the redeemer pays a portion of the tax owed, "the county treasurer shall apportion the tax for the portion sought to be redeemed." Section 2211, RCM (1935). Also, *Superior Coal Co.*, addressed and clarified that it is possible to divide mining claims and subsequently create two independent legal estates—one for the surface and one for the subsurface. *Superior Coal Co.*, 98 Mont. at 521, 41 P.2d at 23. Charles Wilson's redemption in 1941 stated that it was partial, for the "surface rights only." Piecemeal redemption was specifically authorized. The second exception to § 2214, RCM (1935), does not apply.

¶21 We conclude that the District Court correctly determined that neither exception to § 2214, RCM (1935), applied to Bergum's current quiet title action. Therefore, the District Court also correctly determined that the one-year statute of limitations of § 2214, RCM (1935), applied and barred Bergum's claim.

11

¶22    *2. Did the District Court err in denying Musselshell County its attorney fees under § 25-7-105, MCA?*

¶23    On December 7, 2011, Bergum offered five dollars in exchange for Musselshell County's consent to quiet title in her favor. On December 21, 2011, Musselshell County counter offered "a one-pound lump of coal, suitable for placement in a Christmas stocking" and to forgo recovery of its attorney fees and costs incurred during litigation in exchange for Bergum dismissing her action to quiet title. On appeal, Musselshell County contends that, under § 25-7-105, MCA, it was entitled to attorney fees, totaling $82,374, because of this counter offer. That statute reads, in pertinent parts:

> 1)  At any time more than 60 days after service of the complaint and more than 30 days before the trial begins, any party may serve upon the adverse party a written offer to settle a claim for the money or property or to the effect specified in the offer. . . . *If the final judgment is less favorable to the offeree than the offer, the offeree shall pay the costs incurred by the offeror after the offer was made. . . .*
>
> .   .   .
>
> 3)  For the purposes of this section, *costs include reasonable attorney fees*.
> 4)  This section applies only to an action or claim for which the amount contained in a pleading is $50,000 or less, exclusive of costs, interest, and service charges, and the action or claim:
>     a)  arises from contract or breach of contract, other than a contract of insurance, bond, surety, or warranty; or
>     b)  involves real property.

Section 25-7-105, MCA (emphasis added).

¶24    As an initial matter, the parties dispute whether Musselshell County's counter offer was a valid offer or whether it was more favorable to Bergum than the final judgment. Bergum argues that Musselshell County's letter did not constitute a legitimate offer. Bergum also argues that a one-pound lump of coal, shared between Barbara Brown

12

Bergum, Richard Brown, Jeannette Studer, Caroline Y. Houston, Kathy F. Arnoux, and Ethel Gentry is not a "more favorable" result than the final judgment, which quieted title in Musselshell County's favor. In her briefing to this Court, Bergum claims that a one-pound lump of coal is worth $0.0058, and that she and the five other appellants would receive $0.000967 each. Bergum argues that offering six people half of a penny to share is not more favorable than the final judgment and should not be the basis for an award of attorney fees.

¶25 We decline to address whether Musselshell County's offer was legitimate, as the District Court's decision did not rest upon these grounds. We nevertheless observe that the portion of Musselshell County's offer, relating to a one-pound lump of coal, strikes us as unprofessional and inconsistent with what we would expect from a public entity. Regardless of whether Musselshell County's offer was valid or a more favorable result to Bergum than the final judgment, § 25-7-105(4), MCA, only allows attorney fees if the amount contained in the pleading is $50,000 or less. Without considering the legitimacy of Musselshell County's offer, the District Court concluded that Musselshell County had "failed to establish that the value of the subject property is less than $50,000 as required by Mont. Codes [sic] Ann. § 25-7-105 (3) and (4)." As proof of the amount contained in Bergum's complaint to quiet title to the Mineral Right of Entry in the Subject Real Property, Musselshell County offered a copy of a coal lease which had been executed on a parcel of land adjacent to the Subject Real Property. The District Court held that this evidence "is, without more, insufficient to establish that the value of the entire subsurface estate is worth less than $50,000."

13

¶26 Musselshell County argues the District Court erred by failing to hold an evidentiary hearing to determine whether the value contained in Bergum's complaint is worth less than $50,000. Bergum counters that Musselshell County never requested the District Court hold a hearing. Musselshell County relies on several pages of its pleading entitled Response in Opposition to Motion to Have Memorandum of Costs Taxed and Reply in Support of Memorandum of Costs as evidence of its contention that "[t]he necessity of a hearing was made known to the District Court." Upon review, that pleading notified the District Court that if attorney fees were awarded, a hearing would be required to determine whether the attorney fees were "reasonable." However, the District Court did not award attorney fees, thus, under Musselshell County's own reasoning, a hearing was not required. We conclude that the District Court's failure to hold an evidentiary hearing on the amount in the complaint was not in error because Musselshell County did not request such a hearing. Instead, the District Court relied on evidence Musselshell County provided to conclude that it had failed to prove the amount contained in Bergum's complaint was less than $50,000.

¶27 Musselshell County introduced insufficient evidence to establish that the requirements of § 25-7-105(4), MCA, were met. We conclude that the District Court did not abuse its discretion in denying Musselshell County its attorney fees under § 25-7-105, MCA.

**CONCLUSION**

¶28    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA


Justice Beth Baker, concurring.

¶29    I agree that the District Court should be affirmed on both issues, but for different reasons.

¶30    First, I agree that the one-year limitation period prescribed in § 2214, R.C.M. (1935) bars the action because neither exception applies.  I do not believe that it is necessary, however, to analyze the constitutionality of Musselshell County's actions in the 1940s in order to determine whether Bergum's claim is barred.  As the Court notes, § 2214 provided in pertinent part that

> no action can be maintained to set aside or annul a tax deed . . . upon any ground whatever, whether on the ground that said deed, or any prior proceeding, was irregular or void, other than that the deed was void because no taxes were delinquent on said lands, or because redemption had been made from said tax sale, unless the action is commenced within one year from and after the date of the issuance of said tax deed[.]

¶31    Bergum claims advantage of the first exception on the ground that "no taxes were delinquent" on the property.  But her allegation that the tax deed was void is premised on the County's allegedly unconstitutional action in retaining the mineral rights to the

15

property when it was reclaimed in 1941. Bergum argues that the 1941 certificate of redemption could not legally convey to Wilson the "surface rights only." Bergum's challenge is to the procedure by which the surface rights and mineral rights were severed and to the County's authority to tax the two interests separately.

¶32 The statute's reference to taxes not being delinquent on the property clearly allowed a property owner to challenge the taxing authority's determination that the property owner failed to pay assessments levied against the property. The property owner's challenge to the legality of the assessments in the first place is not the same thing as a claim that the owner paid the taxes assessed. When interpreting the language of the statute, the Court "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Further, we recognize that "courts should avoid addressing constitutional issues whenever possible." *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079. I would conclude that a taxpayer's challenge to the constitutionality of a county's tax assessment is not within the first exception to § 2214, R.C.M. (1935). For the same reason, the second exception does not save Bergum's claims, which are premised on the alleged illegality of the County's action in allowing Wilson to redeem only the surface rights.

¶33 I would therefore conclude that Bergum's claim is barred by the one-year limitation period without reaching the merits of Bergum's constitutional arguments about separate taxation of surface and mineral interests or redemption of surface rights only. "We may affirm a district court decision that is correct regardless of the district court's

16

reasoning in reaching its decision." *PacifiCorp v. State*, 2011 MT 93, ¶ 54, 360 Mont. 259, 253 P.3d 847.

¶34   With respect to Issue Two, I agree that the denial of attorney's fees to the County was correct.  In my view, the County's argument that it made a valid settlement offer for purposes of § 25-7-105, MCA, is disingenuous.  Though the County casts its offer as a benefit to the Plaintiffs that simply was made with "poetic wrapping and literary allusion," no reasonable mind could conclude that the offer of a lump of coal made days before Christmas was a good faith settlement offer.  I would conclude that in order to obtain the attorney's fee benefit afforded by the statute, a party must make a legitimate, good faith offer of settlement.  The County's "offer" in this case does not by any measure meet that standard, and was especially in poor taste when coming from a public entity.


/S/ BETH BAKER