No. 86-576

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

SHARON HULETT,

         Plaintiff and Respondent,

    and

MONTANA HUMAN RIGHTS COMMISSION,

         Intervenor and Respondent.

    -vs-

BOZEMAN SCHOOL DISTRICT NO. 7,

        Defendant/Petitioner and Appellant.

_____

APPEAL FROM:  District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Frank Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donald E. White, Bozeman, Montana

    For Respondent:

        Hilley & Loring; Emilie Loring, Great Falls, Montana
        Janice Frankino Doggett, Human Rights Commission,
        Helena, Montana

_____

Submitted on Briefs: April 16, 1987

Decided: August 13, 1987

Filed:  AUG 13 1987

*Ethel M. Harrison*

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Bozeman School District No. 7 appeals a Gallatin County District Court award granting Sharon Hulett damages for discriminatory hiring practices under an anti-nepotism policy. We affirm.

The issues are:

1. Did the lower court correctly affirm the Human Rights Commission's ruling that Sharon Hulett had taken reasonable steps to mitigate her damages from 1978 to 1980 and during the 1984-85 school year?

2. Is Sharon Hulett's claim barred by laches?

In January 1978 Sharon Hulett applied for an elementary teaching position with Bozeman School District No. 7 (School District). She was not hired. In April of that year, she filed a complaint with the Montana Human Rights Commission (Commission), charging that the School District refused to hire her for a teaching position because of her marital status. Her husband was the principal of an elementary school in the district. The School District had an anti-nepotism policy which prohibited the hiring of spouses of administrators.

A hearings examiner heard the complaint in September 1981. The examiner found against the School District, since marital status is recognized as a protected class in Montana. He ordered that Sharon Hulett be hired, and awarded her back wages. The full Commission held a hearing in May 1982 and upheld the examiner's findings.

The School District petitioned for judicial review of the Commission's order. The District Court upheld the finding on liability and reversed on the question of damages. It remanded the case to the Commission for further consideration of Sharon Hulett's obligation to mitigate damages.

2

The Commission reheard the case in November 1984. It concluded that Sharon Hulett had taken reasonable actions to mitigate her damages, and ordered that she be hired for the next available teaching opening and that she be awarded back pay. The School District again appealed. The District Court, after oral argument, generally affirmed the Commission's order except for modifying the damage award by subtracting damages for a period of time between 1980 and 1984 during which Sharon Hulett was a graduate student at Montana State University. The court determined that Sharon Hulett was not available for employment during that time. It also found that the School District failed to mitigate its damages by refusing to hire her until September 1985. The District Court awarded Sharon Hulett total damages of $71,247.

I

Did the lower court correctly affirm the Commission's ruling that Sharon Hulett had taken reasonable steps to mitigate her damages from 1978 to 1980 and during the 1984-85 school year?

The School District argues that Sharon Hulett failed to take reasonable steps to mitigate her damages because she did not apply for teaching positions in schools in communities surrounding Bozeman. It says the Commission's conclusion that she met her duty to mitigate her damages is clearly erroneous under the standard established for the duty to mitigate damages. That standard has been defined as the duty to do what an ordinarily prudent person would do under the circumstances. Harrington v. Holiday Rambler Corp. (1978), 176 Mont. 37, 42, 575 P.2d 578, 581.

The Commission made extensive findings of fact with regard to Sharon Hulett's attempts to secure employment in schools and in other positions. Commission's Findings of Fact No. 3 and No. 7 are illustrative:

3

3.    During the Fall of 1979, Charging Party [Hullett] applied for employment at clothing stores, jewelry stores, flower shops, doctor's offices, dentist's offices, the Gallatin County Superintendent of Schools, at Montana State University and again with Respondent. In each event, she was unable to find employment. Charging Party renewed her application with the Respondent each year.

. . .

7.    Charging Party was reluctant to apply to rural schools for teaching because they paid much less than the Respondent and would involve lengthy commuting to work. The rural positions would have required expenditures for an all weather vehicle, and additional child care arrangements and expenses beyond what would have been required had she been able to teach in Bozeman.

Sharon Hulett testified that she worked off-and-on in various teaching-related capacities during the periods in question, and her wages from that employment have properly been deducted from the damages awarded to her. She testified that in the last period of time with which we are concerned, 1984-85, because her children were older and she had moved from Bridger Canyon to the City of Bozeman, she had submitted written job applications to several of the school districts in the area surrounding Bozeman. At that time, both Sharon Hulett and the School District were aware that the District Court had affirmed the Commission and ordered the School District to offer Sharon Hulett the first available teaching job.

We have reviewed the testimony of Sharon Hulett and the other evidence, and conclude that there is substantial credible evidence to support the findings of the Commission. We affirm the holding of the District Court that the conclusion on the part of the Commission that Sharon Hulett had met her

4

burden on mitigation of damages for 1978 to 1980 and 1984-85 was not arbitrary or capricious.

The School District further contends that the damages awarded for the 1984-85 school year have been miscalculated by a failure to deduct Sharon Hulett's actual wages earned in 1984 and by the use of the M.A. pay scale rather than the B.A. pay scale for the same year. The findings of fact show that Sharon Hulett's income in 1984 was earned from January through July of that year. Since that income was earned prior to the 1984-85 school year, those sums are not properly deductible from what she would have earned during the school year. Further, we do not accept the School Board's argument that if Sharon Hulett had been employed by them she would not have earned her M.A. degree. Full time employment would not have prohibited Sharon Hulett from earning her M.A. in evening classes or summer school. Therefore, it is not error to use the M.A. pay scale. We hold that damages have been correctly calculated.

II

Is Sharon Hulett's claim barred by laches?

The School District argues that Sharon Hulett is guilty of laches and has failed to prosecute her claim in a timely fashion. Specifically, it points to the delay between the filing of the claim with the Commission in April 1978 and the decision of the Commission in January of 1982.

"The doctrine of laches applies when a party has been negligent in asserting a right, and where there has been an unexplained delay of such duration as to render enforcement of the asserted right inequitable." Peterson v. Hopkins (Mont. 1984), 684 P.2d 1061, 1066, 41 St.Rep. 1140, 1146. The record shows that Sharon Hulett was denied a position with the School District in January of 1978. She filed her complaint with the Commission in April 1978. The matter was

5

delayed until fall of 1979, pending a decision on the School District's separate but controlling petition for a writ of prohibition preventing the Commission from investigating any cases involving the District. Shortly after that petition by the School District was denied, Sharon Hulett filed an amended complaint. In 1980, the matter was investigated, certified for hearing, argued for summary judgment, and set for hearing. The hearing set for March 1981 was cancelled because the Commission was without funds due to legislative action. The hearing date was reset, hearing was held in August 1981, and decision rendered in January 1982.

While the delays in this action have been extensive, especially when compounded with the additional delays suffered since the January 1982 decision, it does not appear that any negligence on the part of Sharon Hulett has caused the delays. They rather arose as the result of one bureaucratic or legal snafu after another. There are no unexplained delays. We hold that the doctrine of laches does not apply.

We do wish to express to the parties, to the District Court, and to the Commission our genuine concern about the extreme length of time it has taken to dispose of the issues presented here. A total of nine years has elapsed since Sharon Hulett's claim arose. The delays found here, while not the fault of any one body, cumulatively result in a potential injustice to all parties.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

6

_John Conway Harrison_

_R. C. McIntosh_

_William E. Hunter_

_John C. Shelley_

Justices

Mr. Justice L. C. Gulbrandson respectfully dissents to that portion of the majority opinion affirming the monetary award of $71,247.00, plus entitlements in the form of fringe benefits.

In my view, the testimony of the plaintiff herself demonstrates that the finding of the Commission that plaintiff had met her burden on mitigation of damages should not be affirmed. The plaintiff testified that, in effect, she applied to no school district outside of Bozeman, even though one of the principals had approached plaintiff about an application, and unrefuted evidence showed there were many teaching vacancies within ten miles of Bozeman during the period in question, and that a high percentage of teachers in those schools lived in Bozeman.

To the plaintiff's credit, she gave candid reasons for her failure to apply for a teaching position, including the reason that the rural schools paid about $2,000 to $4,000 less than the defendant school district. A most revealing reason given by the plaintiff for her failure to apply was the following:

> The other thing, too, is that definitely through all this, I was probably naive enough to think that all this was going to be resolved fairly quickly, and that within a year or so, [it] would be taken care of and I would be teaching in Bozeman, and, you know everything would be just fine.

It is my opinion, based on the entire record, that the evidence shows that the plaintiff failed to exercise reasonable diligence in mitigating her damages and therefore the monetary award should be reduced by the amount she could have earned had she exercised reasonable diligence in applying for a teaching position.

L. C. Gulbrandson
_____
Justice

8