No. 89-460

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

GLASGOW EDUCATION ASSOCIATION, affiliated
with the Montana Education Association,

Plaintiff and Appellant,

-vs-

BOARD OF TRUSTEES, VALLEY COUNTY, SCHOOL
DISTRICTS 1 AND 1A,

Defendant and Respondent.

APPEAL FROM: District Court of the Seventeenth Judicial District,
In and for the County of Valley,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Emilie Loring argued; Hilley and Loring, Missoula,
Montana

For Respondent:

Catherine M. Swift argued, Montana School Boards
Assoc., Helena, Montana

Submitted: Jan. 9, 1990

Decided: May 8, 1990

Filed:

Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

At all times herein relations between School District No. 1 & 1A of Valley County, as employer, and Glasgow Education Association (Association), for the District employees, were governed by a written negotiated agreement. The agreement included a provision for arbitration of grievances, with the decision of the arbitrator to be binding and final. On receipt of an adverse decision from an arbitrator, the School District informed the Association that the District would not comply with the arbitrator's award. The Association brought a complaint in the District Court, Seventeenth Judicial District, Valley County, against the District for breach of contract, and to enforce the arbitration award. The School District filed its answer in the District Court, denying the breach of contract, and affirmatively defending that the award of the arbitrator sought to be enforced was illegal because the arbitrator had exceeded his authority in making the award. The School District also counterclaimed for an order vacating the arbitrator's award. There being no disputed facts, the District Court, on motions from both parties for summary judgment, entered its judgment vacating the arbitrator's award. The Association appealed the judgment to this Court. We reverse and order that the award of the arbitrator be reinstated.

The basis of our holding is that under the agreement between the parties providing for final and binding arbitration, the arbitrator's award draws its essence from the agreement, that is, from the parties' intentions. We further determine that the "makewhole" remedy of the arbitrator is correct under the agreement.

The agreement provided, as a fringe benefit, District payment of a percentage of the employees' health insurance premiums. The provision follows:

ARTICLE 10. FRINGE BENEFITS

10.1. The Board of School Trustees agrees to provide payment of 90 percent of the premiums for HEALTH insurance as detailed in the group insurance policy held by School District No. 1 for the 1986-88 school year. This payment shall include premiums for the full-time teacher and his or her dependents. Board contribution for the 1986-88 school year shall be:

90% if the next years increase is between 0-10.9%
88% if the next years increase is between 11-20.9%
87% if the next years increase is between 21-29.9%
85% if the next years increase is greater than 29.9%

At the time of the grievance, the contract required the employer to pay 85% of the health insurance premiums. In fact, the employer paid 100% of the premiums for three groups of employees, (1) those whose premiums were completely paid by the employer prior to 1969; (2) those performing some administrative functions; and, (3) those employees married to other employees of the School Districts. The arbitrator pinned his decision to the last group.

In August, 1987, a grievance was filed by Helen Hetrich, a teacher who was not married to another employee of the District and who requested that 100% of her insurance premiums be paid. Her grievance was extended to include all members of the bargaining unit for whom the District had not paid 100% of the insurance premiums. In 1987, when the grievance was filed, 16 teachers out of a total of 70-some had received 100% of premium payments.

When the School District denied the grievance, an arbitrator was called in in accordance with the agreement between the parties. First off, in his written order, the arbitrator agreed with the association that the contract provision for insurance premiums clearly and unambiguously applied to all of the employees of the

District contained in the bargaining unit. The arbitrator found that the contract provision prohibited the School District's practice of paying 100% of the health insurance costs for some unit members.

The Association argued before the arbitrator that the appropriate remedy for the breach was that all unit members for whom the employer paid less than 100% of the health insurance premiums should be reimbursed for the amount they were required to pay for the term of the contract plus interest. On the other hand, the employer argued that the appropriate remedy was that the employer cease making the 100% payments to the favored unit members and that the employer be required to make all payments to all unit members in accordance with the contract.

The arbitrator declined to require such payments by the District, as urged by the Association, based purely on the breach of contract. The arbitrator denied relief on that ground, saying:

. . .

> While the Employer improperly paid more than it should have for health insurance for some employees, it indisputedly paid the proper amount for the class of unit members for which the Association seeks the additional compensation. The class seeking additional relief received all that it was entitled under the contract. To grant members of the class additional relief would be inconsistent with the contract, their legitimate expectation under the contract and constitute a windfall. The fact that some employees received benefits in excess of what they were entitled under the contract does not justify a remedy that would require that all employees receive benefits in excess of what they were entitled under the contract (citing authority).

Arbitrator's decision and award at page 13.

4

The arbitrator, however, found a different situation to exist with respect to couples who were married and who worked for the District, and who received a contribution of 100% of their insurance premiums. The arbitrator found that the contract between the parties prohibited discrimination based on marital status. He determined that position from the following provisions in the agreement:

> 6.1. The Board shall select employees as needed on the basis of merit, training and experience. No discrimination against any applicant or employee because of race, creed, color, national origin, sex or age shall exist. The Board shall take <u>all necessary actions</u> to comply with the letter and the spirit of state and federal laws prohibiting discrimination in employment. Every announcement or listing of a position shall include the statement that the District is an Equal Opportunity Employer. (Emphasis in contract.)

The arbitrator determined that the foregoing Article 6.1 incorporated the prohibition of discrimination through marital status found in Montana state law, § 49-2-203(1)(a), MCA, into the collective bargaining agreement.

The arbitrator held that the payment of 100% of the insurance premiums to married couples who all worked for the District was discrimination based on marital status. He said:

> . . .

> Here, the contract prohibits discrimination based on marital status. The Employer's policy grants greater benefits to married employees, both of whom work for the District. The policy constitutes unlawful marital status discrimination because non-married employees may not obtain these benefits because of their marital status, despite the fact that not all married persons receive the benefit.

Arbitrator's decison and award at pages 16, 17.

5

Discrimination based on the identity and occupation of one's spouse is unlawful marital status discrimination under state law. Thompson v. School District (Mont. 1981), 627 P.2d 1229; Hulett v. Bozeman School District No. 7 (1986), 228 Mont. 71, 740 P.2d 1132. The School District does not actively dispute on appeal that the payments made by the School District on behalf of married couples working for the District constituted marital status discrimination in this case.

The School District argues most strongly, however, that the arbitrator's award in this case violates the contract because the grieved employees will receive more than provided in Art. 10.1 of the agreement, and because the School District contends that the arbitrator went beyond his authority under the agreement to grant the award.

We have noted above that the arbitrator had determined that the violations of the contract with respect to those employees who have been receiving 100% of the insurance premiums do not require a remedy that the disfavored employees be brought up to the level of the favored employees. The arbitrator took this position because the contract established the level of entitlement at the amounts paid for the disfavored employees. He found that a different remedy was necessary where the contract specifically incorporated the state and federal law of discrimination. He held that the incorporation of the language "board shall take all necessary actions to comply with the letter and spirit of state and federal laws prohibiting discrimination in employment" not only

incorporated the state and federal protections against discrimination but also the remedies provided to address such violations. In stating the purpose of the grievance procedure, the agreement provided:

> 23.2. The purpose of this procedure is to secure, at the lowest possible level, equitable solutions to the problems which may from time to time arise affecting the welfare or terms and conditions of employment of teachers . . .

The arbitrator determined that the proper remedy for discriminating against an employee or class of employees is to bring the disfavored employee or class to that level of the favored employee or class. He, therefore, made an award ordering the School District to pay the unit employees who did not receive a 100% employer health insurance contribution the difference between the 100% and the amount actually paid, plus interest at the rate of 10% for the term of the contract, at those amounts necessary to bring the employees to the level of the favored employees.

The School District contends that the arbitrator, in making the award, modified, changed, or rewrote the contract, and, in incorporating the "make whole" remedy in the contract, went outside the bounds of the contractual provisions. The School District contends that the case of Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) is authority that an arbitrator may not invoke public laws to fashion a remedy that conflicts with the agreement between the parties, or which is based upon the arbitrator's view of the requirements of legislation, rather than on the interpretation of the collective bargaining

7

agreement. The arbitrator, the School District contends, has only authority to resolve questions of contractual rights even though the contractual rights may be duplicative of substantive rights secured by a statute. Barrentine v. Arkansas-Best Freight System (1981), 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641.

This and other cases cited by the School District are not quite on point here. In the cases relied on by the School District, the employees had lost before the arbitrator, and when they later moved to enforce their statutory rights, the employers argued, unsuccessfully, that the arbitration award precluded subsequent judicial relief. The situation here is different. The agreement itself is not in conflict with general law, and the employer's practice of paying 100% of the premiums based on marital status violated both the contract between the parties and state law. The actions of the School District violated particularly this provision of the agreement,

> 24.5. The provisions of this agreement shall be applied without regard to race, creed, religion, national origin, age, sex or marital status.

It was not necessary for the arbitrator, in making his award in this case, to resort to statutory law outside of the contract to fashion a remedy. The contract itself contained anti-discriminatory provisions requiring the Board to comply with state and federal laws prohibiting discrimination. The "make whole" remedy adopted by the arbitrator is a proper remedy in discrimination cases. Albermarle Paper Co. v. Moody (1975), 422

U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280. The grievance procedure itself recommended "equitable solutions to grievances arising between the parties." The "letter and the spirit" of state and federal laws prohibiting discrimination includes a remedy which brings the disfavored employees or class to the level of the favored employees or class. We hold that the arbitrator was working within the contractual provisions of the contract between the parties, whose intention in agreeing to final and binding arbitration within the contractual agreements was negotiated and bargained for, and that the award made by the arbitrator in this case drew its essence from the contractual provisions, that is, from the intention of the parties. See, United Steelworkers v. Enterprise Wheel and Car Corporation (1960), 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428. When an arbitrator whose decision is final and binding acts within his contractual authority and not unlawfully, courts are without power to set aside his decision.

As a second issue on appeal, the School District contends that the award of the arbitrator, which was retroactive to the beginning of the contract term was improper because of the provisions of § 23.4 that the teacher should initiate the first level of proceedings within 20 school days of the alleged occurrence of the grievance. The School District contends that this provision limits any award to adjustment for no more than 20 days prior to the bringing of the grievance.

This second issue was brought to the arbitrator during arbitration on the employer's petition for clarification and reconsideration, and the arbitrator stated:

> The Employer also argues that the contract provision setting a 20 day period for filing grievances established the maximum time period that it is liable for a contract violation remedial relief. This conclusion is not supported by the contract or the other evidence. The 20 day period has a function similar to a statute of limitations; grievances filed beyond that period are not timely and the employer need not process them. The 20 day period does not speak to limiting the appropriate remedial relief of a meritorious and timely grievance.

Arbitrator's decision on employers petition on page 4.

The arbitrator was correct again in interpreting the contract. No provision limits the remedy for grievances as contended for by the School District. The award by the arbitrator was proper.

Accordingly, we reverse the judgment granted by the District Court, and since the facts are undisputed, reinstate the award ordered by the arbitrator in his decision of October 20, 1988.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Fred J. Weber specially concurs as follows:

I concur in the result reached in the majority opinion which concludes that the arbitrator's award was appropriate because of the contract provision which required that the Board shall take all necessary actions to comply with the letter and the spirit of state and federal laws prohibiting discrimination. My concern is our inability to address the resulting contradiction.

The analysis by the arbitrator demonstrates my position. With his background experience in labor law, the arbitrator concluded that he could not require payments to the teachers under the terms of the contract. He stated:

> The class seeking additional relief received all that it was entitled under the contract. To grant members of the class additional relief would be inconsistent with the contract, their legitimate expectation under the contract and constitute a windfall. The fact that some employees received benefits in excess of what they were entitled under the contract does not justify a remedy that would require that all employees receive benefits in excess of what they were entitled under the contract.

Under the specific limitations of the contract, the arbitrator concluded that he could not order benefits for the employees in excess of that to which they were entitled under the contract. Then he effectively disregarded the contract limitations by applying the federal Civil Rights Act. I am not able to explain our ability to enforce a general provision while disregarding express contractual limitations.

The result of our opinion is that it gives clear notice to employers to avoid any reference to discrimination laws in employee

11

contracts. That is not a worthwhile objective.

My second concern is that our interpretation with regard to the Civil Rights Act may result in the elimination of the finality of arbitration as to the employee but not the employer. The contract here provides "[t]he decision of the arbitrator will be submitted to the Board and the Association and will be final and binding upon the parties." The aim is that the arbitrator's decision should be final and binding upon both parties. Unfortunately, that result might not occur if the arbitrator's decision had been favorable in this case to the employer Board.

Employees asserting violations of the Civil Rights Act are able to bring suit through an administrative agency or district court without regard to their rights under the collective bargaining agreement. This could result in the employee's ability to proceed in the court system even though the employee had lost to arbitration. See Meltzer, B. "Labor Arbitration and Overlapping and Conflicting Remedies for Employment Discrimination," 39 U.Chicago L.Rev., 30 (1971); Alexander v. Gardner-Denver Co. (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147.

The result is that the contract has been further emasculated by rendering the arbitration provision ineffective. This reaffirms the previous conclusion that employers somehow must eliminate any reference to discrimination laws in labor agreements. I am disturbed by the effect of our opinion.

_____ Justice

12

Justice Diane G. Barz concurs in the foregoing special concurrence.

_____
Justice

Justice John C. Sheehy, concurring specially:


The special concurrence of two Justices suggests that employers "must eliminate any reference to discrimination laws in labor agreements." I must point out that an employee who is the victim of illegal discrimination has a right to sue independent of the employment contract. In the cited case of Alexander v. Gardner-Denver Co. (1974), 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147, the United States Supreme Court held that civil rights cannot be prospectively waived by contract, and indeed form no part of the collective-bargaining process. When an employee sues, the Supreme Court held, for a Title VII violation, even after losing at arbitration, he is asserting a right given to the employee by statute independent of the arbitration process, the employee being the only possible victim of discriminatory employment practices.

Thus, eliminating any reference in labor agreements to anti-discrimination laws will not change the right of employees to enforce such laws regardless of the collective-bargaining agreement.

_____
Justice